HUNT *v.* STROMBERG MOTOR DEVICES CO.

1. CORPORATIONS—CONTRACTS—APPARENT AUTHORITY OF OFFICER.
   Where an officer of a corporation, having authority to act, refers a person seeking to enter into a contract to another as the proper person to deal with, the latter has apparent authority to act.

2. SAME—PRINCIPAL AND AGENT—EVIDENCE—ADMISSIBILITY.
   Where plaintiff, on the expiration of his contract of employment with defendant corporation, which was made by defendant's vice-president, who was also its treasurer, a director, and in charge of its sales department, was informed by the latter that he no longer had the power to employ plaintiff, but that the authority had been transferred to a certain other director of defendant, plaintiff had the right to rely on the instructions given him and assume that said other director had authority to engage him, and the exclusion of testimony by plaintiff to the making of an oral contract of employment, on the ground that said director's authority had not been shown, was error.

3. PRINCIPAL AND AGENT—EVIDENCE—AGENCY A QUESTION OF FACT.
   Agency is essentially a question of fact for the jury when there is any testimony direct or inferential tending to establish it.

Error to Wayne; Jayne (Ira W.), J. Submitted April 29, 1921. (Docket No. 90.) Decided October 3, 1921.

Assumpsit by George H. Hunt against the Stromberg Motor Devices Company for breach of a contract of employment. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Charles H. Hatch,* for appellant.

*Campbell, Bulkley & Ledyard* (*Charles H. L'Hommedieu* and *Selden S. Dickinson,* of counsel), for appellee.

STEERE, C. J. Plaintiff brought this action to recover damages for breach of an alleged oral contract under which he claims to have been employed as manager of defendant's Detroit branch for the year 1918. The trial court sustained objections to the plaintiff's offered evidence of his contract on the ground that the authority of a director named Ryan with whom the contract was claimed to have been made had not been shown. The questions for review here are whether plaintiff had *prima facie* shown as a matter of law that Ryan had authority to make the contract as agent for defendant, or that, because of statements by defendant's vice-president, O'Neill, it was estopped from denying Ryan's authority.

The Stromberg Motor Devices Company is an Illinois corporation engaged in the manufacture and sale of carburetors, with its headquarters and main office in Chicago. During the time involved here it had six stockholders, the principal one being a corporation called the Stromberg Carburetor Company of New York, located at 37 Wall street, which held 495 of defendant's 500 shares of stock, the other five stockholders with one share each being directors. Two of these were Allan A. Ryan of 55 Wall street, New York, and William L. O'Neill of Chicago, who was defendant's vice-president and treasurer in charge of its selling department. It maintained a Detroit branch, having an office in that city with a manager in charge who handled the business of what was known as Detroit territory, which included all of Michigan, and Ohio except four counties. Plaintiff was manager of its Detroit branch from October, 1915, through 1916, 1917 and until March, 1918. The business of the Detroit territory was apparently quite extensive. Its sales in that territory alone amounted in 1918 to over $550,000. Plaintiff was employed as manager of the Detroit branch by O'Neill who had

general charge of all sales business of the corporation. Plaintiff worked under and made his reports to him.

When plaintiff took charge of the Detroit office in October, 1915, his contract of hiring was oral, but during 1916 and 1917 he had written contracts with defendant proposed, negotiated and signed by O'Neill as its vice-president.   For 1916 he received a salary of $3,600 with additional compensation of 2 per cent. on the net business done in the Detroit territory in excess of $300,000, and in 1917 a salary of $5,000 with 2 per cent. additional on the business in that territory exceeding $250,000.

In November, 1917, plaintiff had a conversation with O'Neill in reference to his services for 1918, in which O'Neill said Mr. Ryan wanted him to work on a different basis and his contract would be subject to a cut, and told plaintiff "what Mr. Ryan's relations with the company were."   Asked by his counsel "What did he say to you on that subject?" defendant interposed objection to the question which the court sustained. During their conversation in November, plaintiff told O'Neill he would like to continue in the employment but for not less than his financial returns in 1917. O'Neill said his services were satisfactory and he wanted him to continue by all means, but his contract with the company "was subject to the direction of Mr. Ryan and the terms must be with his approval." In December, when plaintiff was at O'Neill's office in Chicago, the latter produced and read to him a proposed form of contract which he said "was the kind of form Mr. Ryan wanted executed by the company," and plaintiff told him "that form would not be satisfactory to me, and I did not see how he could expect it would be."   O'Neill protested plaintiff's objection to it placed him in an embarrassing position as he would have difficulty in explaining to Ryan why plaintiff returned and would not accept it, so they arranged

that plaintiff would take the proposed contract back to Detroit with him and from there write O'Neill a letter, which he could show Ryan, returning it with his explanation of why he could not accept the contract in the form proposed.   This was done and O'Neill acknowledged the same in a letter dated December 29, 1917, stating amongst other things that they would have an opportunity to discuss the subject at the New York automobile show.

They met in New York on January 5, 1918, and O'Neill then told plaintiff Ryan dictated the form of contract submitted to him in December and "was the man in authority to make these contracts."   Later he said to plaintiff, at the Biltmore hotel, that he was going to see Ryan the next morning and would have his contract for 1918 "fixed up."   Plaintiff had no more conversation with O'Neill on the subject, but when in New York on January 21, 1918, went to Mr. Ryan's office and had an interview with him, in which his counsel proposed but was not allowed to show he was employed by Ryan as manager of defendant's Detroit branch for 1918, plaintiff not being permitted, among others, to answer the question, "What was said between you and Mr. Ryan on that subject in that conversation?"

Plaintiff returned to Detroit on January 22d and continued his services as manager of defendant's Detroit branch until March 25, 1918, when O'Neill went to Detroit and discharged him, having written him to that effect two, days previous, inclosing a check for $785.75 as compensation "in full for commissions, salary and expenses."   In their interview on March 25th he told plaintiff he had come over to replace him by another man, that there was no dissatisfaction with his work, as the fact he had only visited there a couple of times a year since plaintiff was in charge indicated, but he "had to do it."   Plaintiff protested

that he was employed for the year, desired to remain, stood ready to fulfill his contract and stated, "I told him of making that agreement with Mr. Ryan and of the conversation between myself and Mr. Ryan on that subject." He was asked "What did you tell him that you said to Mr. Ryan?" This question was objected to by defendant's counsel, and the objection sustained. Plaintiff was the only witness sworn. Defendant offered no evidence and rested its case on the defense that plaintiff's testimony failed to show any contract of hiring. The court having sustained defendant's objections to the offers and efforts of plaintiff's counsel to prove the contract under his theory of the case, it ended as related, with proper objections and exceptions by plaintiff's counsel to save for review adverse rulings of the court.

As the case terminated, our inquiry is confined to the question of whether, at the time the court refused to permit plaintiff to testify as to what was said between Ryan and himself on the subject of his employment, there was any competent evidence in the case tending to prove that Ryan was authorized as an agent of defendant to employ him. The evidence is direct and positive that O'Neill, who was a director, vice-president and treasurer of defendant, in charge of its sales department in which defendant was employed, so told him. This carries the question back to the evidential sufficiency of what O'Neill told plaintiff to render admissible the latter's offered testimony touching his claimed contract of employment by defendant made through Ryan acting as its agent.

Defendant's counsel admit that the cases cited in plaintiff's brief establish the rule "that a reference to an inferior by an agent who himself has power to act in the premises clothes the designated person with apparent power to act."

In discussing *"What constitutes apparent authority,"*

that proposition is thus stated in 3 Fletcher's Cyclopedia on Corporations, § 1918:

"Where an officer, having authority to act, refers a person seeking to enter into a contract to another as the proper person to deal with, the latter has apparent authority to act."

But it is urged for defendant that rule can have no application here because O'Neill instead of having or claiming authority to act distinctly stated he did not when telling plaintiff Ryan had, and argued that it follows "one not having authority to act cannot by reference clothe another with apparent authority."

We think this contention overlooks the reason of the rule of apparent authority as applied to conditions shown here. O'Neill was an active and responsible officer of the corporation. In this age of corporations, when so great a proportion of the country's business is carried on by them, often through corporations within corporations or subsidiary corporations which the others own and control, yet greater difficulties than formerly confront the outsider when called upon at his peril to verify the authority of their agents and officers in a particular transaction according to the narrow rules of record evidence once more generally recognized, and yet often though not always applicable. The circumstances of particular cases frequently present controlling facts of force materially modifying them. As said by Justice Marshall in *Ford* v. *Hill,* 92 Wis. 188 (66 N. W. 115):

"This is not inconsistent with the law as laid down by this court, that corporations are fictitious bodies and act through directors (*Ford* v. *Plankinton Bank,* 87 Wis. 363 [58 N. W. 766]), but goes upon the principle that responsibilities will be laid upon the principal for the acts of the agent done within the apparent scope of his authority, according to the course of business as ordinarily carried on, and that the

doctrine of estoppel by the conduct of the principal applies to corporations the same as to individuals."

This is not a case where a mere agent or employee in a subordinate position and not officially connected with a corporation assumed to direct an inquirer to some person as having authority to do a certain kind of business for it. Ryan was not on the visible surface of this corporation O'Neill's superior, but, like him, one of its directors, each owning one share of stock. It is surmisable that he represented the intangible directing power of the owning corporation, but beyond his being a director and financially interested to the extent of owning one of its 500 shares of stock his relations with defendant are largely left to surmise on this record. O'Neill told plaintiff what they were, but the latter was not permitted to tell what O'Neill said on that subject. O'Neill was not only a director but held two other important offices in the defendant corporation and also a responsible position in active charge of its sales department, up to the time this case was tried. As an officer and agent of defendant he hired plaintiff as manager of its Detroit branch where he remained and rendered satisfactory service for two and a half years under three successive contracts made with O'Neill as its agent, two of which the latter signed as its vice-president. During that time plaintiff worked under him and made his reports to him. When the matter of continuing plaintiff's employment for another year came up O'Neill said he certainly wished him to remain, but that he no longer had the power to hire him and in that connection told him to whom such authority had been transferred. Under such circumstances it was but a natural and proper thing in the conduct of the business entrusted to him as manager of that department to communicate such information

to an old employee under him whom he had before then himself several times hired for defendant. It was also but natural, and reasonable prudence, for plaintiff to rely upon his statements under such circumstances. It would have been unreasonable and probably disastrous had he assumed to question the veracity of the vice-president of the corporation and his superior officer in charge of the department in which he was employed.

Corporate powers and purposes can only be expressed and performed through natural persons acting as its officers and agents. They are the means, hands and head by which corporations normally act. A distinction exists between a corporation acting through its officers and by agents. An officer inherently has knowledge, rights and duties not necessarily belonging to a mere employee. His official position and fiduciary relations with the corporation give greater weight and presumption of authority to his acts and words in matters necessary to carrying on the ordinary business of the corporation; and particularly, as here, when they relate to matters connected with a department under that officer's immediate superintendence.

While the facts are not identical, we think in principle the following excerpt from the opinion by Justice CAMPBELL in *Whitaker* v. *Kilroy*, 70 Mich. 635, has application to the situation shown here:

"We think that persons dealing with such a corporation for work have a right to get their information from the person whom the corporation has put in charge, and cannot be required to go elsewhere, and that contracts so made are valid contracts when relating to the ordinary concerns of such business. * * * They have no means of knowledge except inquiry somewhere, and the person put by the corporation in open charge of the business must have power, as to third persons, to represent it."

Agency is essentially a question of fact for the jury when there is any testimony direct or inferential tending to establish it. We are of the opinion that in the rulings complained of the trial court took a too restricted view of the rule of apparent authority of an agent.

The judgment is reversed and a new trial awarded, with costs to plaintiff.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.