[No. 17969.   Department One.   November 8, 1923.]

CHARLES E. STILWELL, *Appellant,* v. HENRY C. MERRIAM
COMPANY, *Respondent.*[1]

CORPORATIONS (164)—LIABILITIES—ESTOPPEL TO DENY AUTHORITY
TO AGENT—ACCEPTING BENEFITS. A corporation is estopped to deny
the authority of its local agent and manager to negotiate a loan
and give the note of the corporation for the purpose of repairing
and improving its building, where it appears that it received the
benefit of and used the money for that and other purposes.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered October 5, 1922,
upon findings in favor of the defendant, in an action
on contract, tried to the court.  Reversed.

*Danson, Williams & Danson (R. E. Lowe,* of coun-
sel), for appellant.

*William A. Monten,* for respondent.

MITCHELL, J.—This action, against Henry C. Mer-
riam Company, a corporation, is to recover a balance
of $1,628.10, and an attorney's fee due on a sixty-day
promissory note of $5,000, dated March 26, 1920, pay-
able to the plaintiff, signed "Henry C. Merriam Com-
pany by Charles B. Merriam, authorized agent." The
defense was that the note was made without authority
to bind Henry C. Merriam Company, and that what-
ever sums were paid to the plaintiff on account of the
note were paid without the knowledge or consent of the
corporation. Findings of fact, conclusions and judg-
ment were entered for the defendant, from which this
appeal has been prosecuted.

While the corporation was authorized to do business
in this state, its home office was in Maine. The stock
of the corporation from a time some years before the

[1]Reported in 219 Pac. 836.

date of the note in suit was held by three brothers, including Charles B. Merriam, two sisters and their mother, all of whom other than Charles were nonresidents of this state after 1912. All six of the stockholders were directors, the mother being the president of the corporation. The greatest part of the property and business of the corporation was in Spokane where it engaged in buying, selling, improving and renting real property. About all of the business property in Spokane was converted into a block known as the Merriam Building, which was erected in 1916 at a cost of about $115,000, $85,000 of which was borrowed money.

Commencing in 1912, Charles B. Merriam acted as agent for the corporation under private instructions from one or more of the other directors as to all the more important transactions of the corporation in Spokane. From the early part of 1919 to July 10, 1920, the real estate firm of Fred B. Grinnell Company acted as agent in collecting rents from the tenants in the Merriam Building, during which period Charles B. Merriam continued to act as agent in other respects. He was provided with an office in the building, was paid a salary for his services, and was furnished a residence for himself and family at the expense of the corporation. In January, 1920, the building was damaged by fire, and Charles B. Merriam was instructed by the other directors to adjust the loss with the insurance companies, to make all necessary repairs, and pay for them out of the insurance money, but not to borrow any money for that purpose. These instructions were secret. He adjusted the loss of $4,098.41, and on January 29, 1920, deposited the money in the bank with which all his banking business, whether private or for the corporation, had been done, it being the same bank suggested by the other directors for that purpose. He caused the building to be repaired.

As found by the trial court, Charles B. Merriam, under written directions from the other directors, terminated negotiations for a ninety-nine year lease of the Merriam Building with one Harry M. Flood. Thereafter, in the early part of 1920, Charles was authorized to negotiate with Charles E. Stilwell, the plaintiff herein, for a ninety-nine year lease of the building, which contemplated an enlargement or improvement of it. About March 26, 1920, Charles applied to Stilwell for a loan of $5,000, stating that the corporation needed the same to be used in paying for the improvements and repairs upon the building. He loaned the money by furnishing a bank cashier's check, payable to the corporation, for which the note in suit was executed and delivered to him. The cashier's check was endorsed in the name of the company by Charles B. Merriam, agent, and deposited in his individual account, which alone was used in all his banking business whether individual or corporate.

The arguments in this court have taken a wide range and several theories adopted for a reversal, contested by the respondent, but we think the judgment must be reversed under the rule that, having received the benefits of appellant's money, the corporation will not be heard to say it is not liable under the circumstances of this case. The evidence shows that, at the time the insurance money was received, there was a balance in the bank in the Merriam account of only $13.22. On the same day the insurance money was paid, $4,504.10 was deposited, and on the same day, January 29, 1920, $4,000 of it was checked out. According to a written report made by Charles B. Merriam of the cost of repairs in the total sum of $2,140.54, nothing had been paid on the repair account, other than $80 at the time the insurance money was checked out. None of the

repairs were paid for by that money, and indeed all of the repairs, other than $469.50, were paid for on and after March 26, 1920, the day the appellant loaned the respondent the $5,000. The bank account further shows that, between the date the insurance money was practically all checked out and the date of the receipt of the money furnished by the appellant, the deposits amounted to only a few hundred dollars. These records are corroborative of the positive testimony of Charles B. Merriam as a witness called by the appellant, under cross-examination in effect that, out of the $5,000, he paid himself $300 salary already due, used $20 to $25 on repairs to his residence which the corporation was to furnish him, and that all the balance of it was used in making repairs to the Merriam Building, together with expenses incurred in other affairs of the corporation, including the services and expenses of himself and others in his negotiations with two several parties looking to a ninety-nine year lease of the building. He testified that it was impossible, for lack of memory, for him to give in detail or more specifically the items composing the total expenditure of the money and that all of the cancelled checks had been destroyed by him as worthless and the books of account, such as he kept, had long prior to suit been turned over to the attorneys for the respondent, whom it seems had never received any such books. The checks were destroyed, it appears, about the time of the sale of the Merriam Building some time before the commencement of this action.

The evidence in the case shows that one payment of $1,133.35 on the note in suit was made by money furnished to Charles B. Merriam by his mother, who was the owner of about one-half of the stock of the corporation and who was advised of the Stilwell note al-

though it does not clearly appear that she was advised that the note had been signed in the name of the corporation. It appears that, at other times, she had furnished him with her private funds for the use of the corporation, and sometimes alone had given him instructions concerning important affairs of the corporation. The other payments made on the note were made by Charles B. Merriam out of rents collected by him after July, 1920, and before the sale of the property; but as to this it does not appear that the other stockholders were advised from time to time that such payments were being made. This debt was recognized, according to the testimony, by another of the stockholders at the time he was here to represent the corporation in the final sale of the Merriam Building, as one of the debts to be paid, although he caimed there was some irregularity in contracting it.

There can be no question about the good faith of the appellant in making the loan, and we think it satisfactorily appears that the corporation has received the benefit of it to the extent its money was used to make payments on the note, together with the balance for which the recovery of judgment is now asked against it, and that the circumstances justify the application of the rule announced in *McKinley v. Mineral Hill Consol. Min. Co.,* 46 Wash. 162, 89 Pac. 495, as follows:

", . . . the evidence showed that the corporation had received the benefits by way of money loaned or advanced by respondent, and by way of his labor and services, which made the consideration for the note. Under such circumstances the corporation will not be heard to say that it neither authorized nor ratified the execution of the note. *Allen v. Olympia Light & Power Co.,* 13 Wash. 307, 43 Pac. 55; *Kirwin v. Washington Match Co.,* 37 Wash. 285, 79 Pac. 928."

Reversed, with directions to enter judgment for the amount sued for together with a reasonable attorney's fee.

MAIN, C. J., HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.