WILLIAM R. MORRISON *vs.* TREMONT TRUST COMPANY.

Suffolk.   March 11, 1925. — May 21, 1925.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Contract,* What constitutes.  *Bank.*  *Agency,* Scope of authority, Ratification.  *Corporation,* Officers and agents.  *Evidence,* Of agency, Competency, Telephone conversation.  *Deceit.*  *Fraud.*  *Actionable Tort.*

A trust company made no promise to pay anything or to guarantee anything to a person to whom was addressed a telegram signed by it and reading as follows: "Have been advised that payment on three thousand overcoats at $2.95 will be made on arrival b l answer telephone call for particulars deposit been left here in part payment"; and an action of contract based on the telegram for breach of a guaranty cannot be maintained against the trust company by the person to whom the telegram was addressed.

The evidence at the trial of an action against a trust company based on the above described telegram as a guaranty was *held* not to warrant a finding that a collection clerk of the trust company, who sent the above telegram, was authorized to act for the defendant in doing so or that his acts in doing so were ratified by the defendant, or that he was held out by the defendant as its agent in transactions of that character; and therefore the telegram and communications from the plaintiff with regard thereto, which were unanswered by the defendant, should have been excluded as evidence.

A telephone conversation by a witness in the action above described with some person purporting to represent the defendant also should have been excluded where it appeared that the witness was unable to state who the person was with whom he talked and it did not appear that such person had any authority to represent the trust company.

An action against the trust company for deceit, alleged to have been practised in the transaction above described, could not be maintained by reason of lack of evidence to show authority on the part of anyone to act for the defendant in the matters in question, or ratification of any such acts by the defendant.

A promise to be executed in the future is not a ground of liability in an action for deceit.

CONTRACT OR TORT with a declaration described in the opinion. Writ dated November 6, 1920.

In the Superior Court, the action was tried before *McLaughlin,* J. Material evidence and exceptions by the defendant relating thereto are described in the opinion. By order of the judge, a verdict for the defendant was entered, and by agreement of the parties the action was reported to this court for determination, it being agreed that "if any of the foregoing evidence to the admission of which objections and exceptions by the defendant are noted should have been excluded, it shall be treated on this report as if it had been excluded. If, on the evidence properly before the jury, the case should have been submitted to them on either count of the declaration, then judgment is to be entered for the plaintiff in the sum of $4,500 to carry interest from the date of the writ, if on the first count; but to be without interest, if on the second count; otherwise the verdict for the defendant to stand."

*P. D. Turner,* (*J. J. Matthews* with him,) for the plaintiff.

*C. F. Rowley,* (*E. G. Fischer* with him,) for the defendant.

CROSBY, J. This is an action in which a count in contract and a count in tort are joined under the statute. G. L. c. 231, § 7, cl. 6. The first count alleges that on or about November 14, 1919, the defendant guaranteed, in writing, the payment of a draft drawn on it by the plaintiff in the sum of $8,850, upon presentation thereof attached to a bill of lading for a shipment of overcoats; and a breach by the defendant of the guaranty. The second count alleges that "on or about the 14th day of November, 1919, the defendant represented that a certain amount of money had been deposited with it in part payment of a draft in the sum of $8,850" for a shipment of overcoats, and that "payment of such draft would be made on presentation of said draft" with bill of lading attached; that "said representations were made for the purpose of inducing the plaintiff" to forward the shipment of overcoats to Boston; that relying on the representations the plaintiff shipped the overcoats, and presented a draft for $8,850 attached to a bill of lading to the defendant; that the defendant well knew that said representations

were false and refused to pay the draft or any part thereof. The answer is a general denial and payment.

The case was tried before a judge of the Superior Court and a jury. At the close of the evidence, the judge on motion of the defendant directed a verdict in its favor, subject to the plaintiff's exception. The defendant also excepted to certain evidence admitted. The case has been reported to this court.

There was evidence, that, before the transaction out of which this action arises, the plaintiff, a dealer in army overcoats, had made various sales to one Bockowitz. Before November 14, 1919, the plaintiff had entered into negotiations with Bockowitz for the sale of three thousand overcoats, and on that date the plaintiff received the following telegram sent by one H. McKinley Swig, who was employed by the defendant as a collection clerk.

"WESTERN UNION TELEGRAM

Received at

A243FY FW 36 2 EXTRA COUNT DOT

RM BOSTON MASS 351 PM NOV 14 1919

W R MORRISON          232

CASWELL HOTEL BALTIMORE MD

HAVE BEEN ADVISED THAT PAYMENT ON THREE THOUSAND OVERCOATS AT $2.95 WILL BE MADE ON ARRIVAL B L ANSWER TELEPHONE CALL FOR PARTICULARS DEPOSIT BEEN LEFT HERE IN PART PAYMENT

TREMONT TRUST H SURG

430 PM"

It was agreed that the signature "H SURG" was intended to be "H. Swig," who is the H. McKinley Swig above referred to.

On November 18, 1919, the plaintiff acknowledged the receipt of this telegram in a letter addressed to the defendant, quoting the telegram, stating the manner in which he intended to make the shipment to Bockowitz, and stating the reason why he did not telephone for particulars as requested in the telegram.

On November 19, 1919, the plaintiff sent a telegram addressed to the defendant, correcting the price mentioned in

his letter of November 18, and referring to the telegram of November 14 as if it were advice that the payment therein referred to would be made by the defendant. By letter dated November 20, the plaintiff confirmed his telegram of November 19. Thereafter the plaintiff delivered the three thousand overcoats to the railroad for shipment to himself at Boston.

On November 26, the plaintiff sent a telegram addressed to "Tremont Trust Co. Attention H. Surg" in which reference is made to the telegram of November 14, "wherein you state draft covering my sale overcoats Bockowitz will be paid by you upon presentation with negotiable bill lading"; and in which it was further stated that the plaintiff was ready to make a draft with bill of lading attached and requested arrangements to be made so that he could have the draft paid in New York. He made the draft, attached it to an invoice and bill of lading and took it to the Irving National Bank in New York, the New York correspondent of the defendant. At that time, a clerk in the Irving National Bank (one Knight) had two talks by telephone with some one purporting to represent the defendant. This person at first said the defendant would pay the draft, but later in the conversation said the trust company would not pay it. These conversations were reported to the plaintiff, who left the draft with the bank for collection and came to Boston. He saw H. M. Swig walking around in the bank and talking there with clerks and others. He told the plaintiff he was the one who had the conversations with Knight and the plaintiff at the Irving National Bank; that he sent the original telegram and had received through the trust company all the letters and telegrams in evidence. He also said to the plaintiff, "Don't go see my father; we will get this matter fixed up to your satisfaction." It appeared that H. M. Swig's father, Simon Swig, was vice-president of the trust company. There was no evidence that any one connected with the defendant besides H. M. Swig knew of the transaction. There was evidence showing that during November, 1919, Bockowitz had a credit of $12.31 with the defendant which was carried as an "inactive account," and that there

was no deposit which had been left with the defendant in part payment on account of the purchase by Bockowitz from the plaintiff. There was also evidence that in 1919 the treasurer of the trust company opened its mail.

If we assume, without deciding, that the telegram is a sufficient memorandum of the alleged guaranty to bind the defendant within the terms of the statute of frauds, G. L. c. 259, § 1, cl. 2, it is plain that it does not contain any promise made by the defendant. In substance and effect it is merely a recital that the defendant has been informed by some one (presumably Bockowitz) that a draft with bill of lading attached would be paid. It contains no promise by the defendant that such payment would be made by it; and does not even promise that the deposit stated to have been left with the defendant would be applied by the trust company in part payment.

Moreover, there is no evidence that H. M. Swig had authority to make contracts on behalf of the defendant. A corporation can act only by agents duly authorized. The telegram, the conversations between H. M. Swig and the plaintiff, the fact that Swig was a collection clerk of the defendant, Swig's conduct (as described by the plaintiff and its former bookkeeper), or the telephone conversations between Knight and Swig present no evidence upon which it could be found that H. M. Swig was authorized to obligate the bank, by sending the telegram or in any other manner. The telegram itself does not purport to show the office of Swig in the bank or his authority to send it. The conversations between him and the plaintiff show no such authority. The fact that he was a collection clerk of the defendant does not show that he had authority to make contracts of guaranty on behalf of the bank. It does not appear that he was authorized to bind the bank by virtue of his position any more than any other clerk would have such power. The only testimony to be found in the record of his duties as collection clerk is that of one Sullivan, the defendant's head bookkeeper in November, 1919. This witness testified that in the regular course of business the functions of the collection clerk were "to take care of col-

lections sent them by other banks or individuals for debts due from depositors of the Tremont Trust Company, and also to undertake the collection of debts in other places due to depositors in the Tremont Trust Company . . . that it was the duty of the collection clerk to find out whether a draft which came to the Tremont Trust Company for collection should or should not be paid on the basis of a depositor's account . . . that if there was a draft for collection in the mail, the ordinary procedure would be to route it to the collection department either with or without a notation to pay or refuse to pay; that sometimes the collection clerk would have authority without instructions from any one else to pay or refuse to pay such a note, dependent upon size, and so forth, and different conditions might occur that might take the authority away from him." There is nothing in this testimony to warrant a finding that H. M. Swig had authority to send the telegram or do any other act which would obligate the defendant to the plaintiff. It follows that, in the absence of proof of the agency of Swig to sign and send the telegram, it was inadmissible and should have been excluded. *Boynton* v. *Laighton*, 1 Allen, 509. *Manilla* v. *Houghton*, 154 Mass. 465. The declarations of an agent are inadmissible to prove his authority when questioned by the principal. *Brigham* v. *Peters*, 1 Gray, 139. *Westheimer* v. *State Loan Co.* 195 Mass. 510, 516.

There is no evidence of any act on the part of any officer or employee of the defendant to show that the unauthorized acts of Swig in this transaction were ratified, nor to show that any other officer or employee of the bank had knowledge of the acts of Swig in the premises. The plaintiff did not request that his communications be answered, nor give the defendant information where he could be communicated with to correct any misunderstanding which he might have respecting the position of the bank. The plaintiff's letters were not acknowledged or answered by the defendant. It was under no duty to answer them. They were self-serving documents and the defendant's silence did not make them competent. Accordingly they should have been excluded. *Pye* v. *Perry*, 217 Mass. 68, 71. *Jennings* v. *Wall*, 217 Mass.

278, 282. *National Wholesale Grocery Co. Inc.* v. *Mann,* 251 Mass. 238.

There is no evidence that Swig was held out by the bank as its agent to act in a transaction of this kind, and therefore he could not be found to have been clothed with apparent authority to bind the defendant. *Nourse* v. *Jennings,* 180 Mass. 592. Nor does it appear that the defendant derived any benefit from the transaction.

The evidence of the witness Knight of a conversation between him and the plaintiff was not binding upon the defendant and should have been excluded. The evidence of the telephone conversations had by him with some person purporting to represent the defendant also should have been excluded: he was unable to state who the person was with whom he talked, and it did not appear that such person had authority to represent the trust company. *Commonwealth* v. *Gettigan, post,* 450, and cases cited.

It is plain that the plaintiff is not entitled to recover under the first count of the declaration.

As to the second count alleging deceit, we find no evidence of fraud or misrepresentations made to the plaintiff by any one authorized to represent the defendant. Since the telegram should have been excluded, there is no ground upon which to base a claim for fraud or deceit. If it had contained a promise to make a partial payment, it could not be the basis of an action of tort, because promises to be executed in the future are not a ground of liability in deceit. *Knowlton* v. *Keenan,* 146 Mass. 86. *Wellington* v. *Rugg,* 243 Mass. 30, 36. The evidence as admitted subject to the defendant's exceptions should have been excluded.

In accordance with the terms of the report, the verdict for the defendant is to stand, and the entry must be

*Judgment for the defendant.*