MISKIEWICZ v. SMOLENSKI.

1. APPEAL AND ERROR—UNLESS ERRORS RESULT IN MISCARRIAGE OF JUSTICE JUDGMENT SHOULD BE AFFIRMED.

Unless it appear that errors complained of have resulted in miscarriage of justice, it is duty of Supreme Court to affirm judgment of lower court.

2. PRINCIPAL AND AGENT—DISPUTED TESTIMONY PRESENTS QUESTION FOR JURY.

When there is disputed question of agency, if there is any testimony, either direct or inferential, tending to establish it, question of agency becomes one of fact for jury.

On applicability of statute of frauds to joint adventure or partnership to deal in real estate, see annotation in 18 A. L. R. 484.

3. HUSBAND AND WIFE—NO PRESUMPTION THAT WIFE ACTED AS HUSBAND'S AGENT.

. There is no presumption that wife was agent of her husband in securing money from her parents which she deposited in bank to husband's credit.

4. SAME—WIFE PRESUMED TO BE AGENT OF HUSBAND ONLY IN REGARD TO NECESSITIES.

Wife is presumed to be agent of husband in making contracts for necessities, but for any other purpose specific authority must be established.

5. SAME—DECLARATIONS OF WIFE ALONE INSUFFICIENT TO ESTABLISH AGENCY TO MAKE LOAN.

Authority of wife to act for husband in making loan may not be . shown by her declarations alone, but it must be established by competent evidence.

6. PRINCIPAL AND AGENT—DECLARATIONS OF AGENT INSUFFICIENT TO ESTABLISH AGENCY.

Agency cannot be established by declarations of agent alone.

7. PARENT AND CHILD—PRINCIPAL AND AGENT—HUSBAND AND WIFE.

If daughter, acting for her parents, sent money to her husband as parents' contribution to joint adventure, or if, on behalf of parents, she asked her husband to invest the money, she would be agent of her parents.

8. HUSBAND AND WIFE—PRINCIPAL AND AGENT—BURDEN OF PROOF.

In action by wife's parents against husband to recover money secured by wife and deposited to husband's credit in bank, on theory that it was loan to husband, burden was on parents to show that wife was agent of husband.

9. PRINCIPAL AND AGENT—WHEN DECLARATIONS OF AGENT ADMISSIBLE.

In action against alleged principal, testimony as to statements . of agent become admissible only in event that agency is shown.

10. SAME—AGENCY FOR SPECIFIC PURPOSE NOT PRESUMED.

Agency for specific purpose is not presumed, but must be established by tracing its source to some word or action of alleged principal.

11. PARENT AND CHILD—PRINCIPAL AND AGENT—HUSBAND AND WIFE—DECLARATIONS OF AGENT.

In action by wife's parents against husband to recover money secured by wife and deposited to husband's credit in bank,

where husband claimed it was not loan to him but was to be invested for parents, instruction to jury that if wife communicated with husband and requested him to buy land for her parents, then she would be their agent, was erroneous, since agency cannot be established by agent's statements alone.

12. HUSBAND AND WIFE—PROMISE TO PAY—RATIFICATION OF WIFE'S AGENCY.

Promise of husband to repay to wife's parents money which she secured from them and placed to husband's credit would amount to ratification of agency of wife in securing money for him.

13. PRINCIPAL AND AGENT—RATIFICATION—ADMISSIBILITY OF AGENT'S STATEMENTS.

Where there was evidence of ratification of agency, jury were entitled to hear all testimony in regard thereto, including statements of alleged agent.

14. TRIAL—EVIDENCE—ORDER OF PROOF.

Where ratification of agency is relied on, proof of dealings constituting ratification should be given before admitting statements of alleged agent.

15. APPEAL AND ERROR—HARMLESS ERROR.

In action against alleged principal, where there was evidence of ratification of agency, rendering admissible statements of agent, error in excluding said statements, *held*, not so prejudicial as to justify reversal, in view of testimony in regard to ratification, and also in view of verdict tending to establish that there was no ratification.

16. SAME—JUDGMENT SHOULD BE AFFIRMED IF NOT RESULT OF ERRORS.

Where Supreme Court is convinced that, had errors not been made, verdict would have been same, judgment should not be disturbed on account of errors.

17. FRAUDS, STATUTE OF—COMPLETED ORAL CONTRACT TO PURCHASE LAND AS JOINT ADVENTURE VALID.

Money advanced under oral contract to purchase land as joint adventure is not recoverable on ground that contract is void under statute of frauds after land has been bought and disposed of, since in such case contract becomes valid, and statute is not applicable.

Error to Kent; Brown (William B.), J. Submitted June 20, 1929. (Docket No. 144, Calendar No. 34,445.) · Decided December 4, 1929.

Assumpsit by Stanley and Josephine Miskiewicz against John J. Smolenski to recover the balance of an alleged loan. From a verdict and judgment for defendant, plaintiffs bring error. Affirmed.

*Sigmund S. Zamierowski* and *Clare J. Hall,* for plaintiffs.

*Dunham & Cholette,* for defendant.

BUTZEL, J. Defendant is an attorney in the city of Grand Rapids. He was married to Rose, the daughter of plaintiffs, for a number of years prior to 1925, when the real estate boom in Florida attracted many investors. Accompanied by his wife and some cousins of plaintiff Stanley, he went to Florida, where they all made a fair-sized profit in two real estate transactions. The defendant, after his return, was again attracted by the lure of quick profits in Florida land speculations. A number of well-to-do Grand Rapids business men, desiring to join him in his Florida land deals, gave him money for that purpose. Defendant claims that, owing to the unsatisfactory condition of their meat market, plaintiffs asked him to let them participate with him in some of his deals. He claims he tried to dissuade them. Defendant returned to Florida, and during his absence his wife lived with her parents, with whom defendant's activities were discussed. Shortly after defendant's return to Florida, $5,000 was placed to his credit in his depositary bank in Grand Rapids by plaintiff Josephine, who was accompanied by Rose, defendant's wife. The sole question in the case is whether the $5,000 was deposited as a loan

to defendant or whether it was plaintiffs' contribution to a joint venture in a Florida land speculation.

Rose, the wife of defendant, died on April 6, 1927, prior to the beginning of this suit, and, therefore, her testimony is not available. Defendant remarried prior to the beginning of this suit. His remarriage caused considerable bitter feeling on the part of the plaintiffs. It seems to have culminated in the bringing of this suit to recover the $5,000 on the ground that it was a loan to defendant. Defendant claims that it was a contribution to a joint venture in the Florida land speculation, and that the money was lost.

It is undisputed that defendant bought a certain parcel of land in Florida. He testified at the trial that he in no way induced plaintiffs to speculate with him, and that the $5,000 was used to obtain for plaintiffs, at their request, an interest in the purchase of a certain parcel of land in Florida; that he purchased the property on a land contract on which he made a down payment of $25,500, and still owed $12,500; that of this amount paid, $5,000 was furnished by plaintiffs, for which they were to have a one-fifth interest; that other Grand Rapids people also furnished part of the money, for which they were to have their fractional interest; and defendant furnished the balance of the money, for which he also was to have his interest. The title was taken in the name of defendant and his wife, Rose, he claiming that his wife's name was inserted for convenience under the Florida laws, and that he bought the property in a trust capacity for the benefit of himself, plaintiffs, and others. There was no thought of keeping the property. All of the parties were looking, not to ownership of property, but to profits that would be made on a quick turnover. The Florida storms and floods occurred soon after the

purchase of the property; the land boom completely collapsed, and defendant testified that he paid an additional $3,500 to be released from his personal obligation on the land contract. The land was disposed of through its surrender to the vendor prior to the beginning of this suit. The question whether the $5,000 was a loan or a contribution to a joint venture is the only question in the case. The jury were so instructed. They found there was no loan but a contribution to a joint venture. They rendered a verdict of no cause of action in favor of defendant.

With the exception of the plaintiffs' disputed statements that defendant admitted he had borrowed the money and had promised its repayment, there is absolutely no showing that defendant gave any authority to his wife, Rose, to borrow money for him from her parents. Defendant testified that he gave no such authority, and that the money was turned over to him as plaintiffs' contribution to a joint venture. Plaintiffs both testified that defendant, after his return from Florida, acknowledged that the money was a loan, and repeatedly promised repayment. Defendant paid the bank $1,300 which plaintiffs claim should be credited on the so-called loan. Defendant testified, however, that he owed plaintiffs' son, Eugene, this exact amount of money, and that Eugene, in turn, owed his parents this sum, and that his payment to the bank of the debt he owed Eugene was in accordance with the instructions he received.

Plaintiffs' claims are negatived by the testimony in the case. In a divorce suit brought against his wife, Josephine, prior to the beginning of this case, plaintiff Stanley stated in a sworn affidavit filed in answer to a motion for alimony, that his wife had appropriated the larger part of the money in ques-

tion in this suit, and had refused to make any accounting of it. This affidavit would indicate that plaintiff Stanley at the time did not consider it a loan, although he must have known the character of the transaction.

Plaintiff Josephine, in her testimony, stated as follows:

"When Mr. Smolenski came back he said that, if we succeed, we would all be rich.

"*Q.* And when he said we would all be rich, he meant you and Mr. Miskiewicz?

"*A.* Well, I expected to get my money back; I expected that I would get a little something he was to share with me; that is what I mean. I didn't know how much of a share I would have. I expected something.

"*Q.* And if the deal had been profitable, you would have expected your share of the profit?

"*A.* Why, I think I ought to have."

A number of telegrams, letters, and postal cards which had been sent by defendant to his wife were found by plaintiff Josephine, after suit had been begun. Some of them were read at the trial. One of the telegrams introduced by plaintiffs is so significant that it almost conclusively establishes the fact that defendant received the money for the purpose of buying property for plaintiffs and not as a loan. This telegram is as follows:

"1925 Aug 9 AM 4 10
"Miami Beach Flo

"Mrs. ROSE M. SMOLENSKI

"671 Davis Ave NW Grand Rapids Mich

"Feeling fine everybody fine Jessie coming to Grand Rapids made two buys one for folks have folks give you five thousand dollars deposit that in my commercial acct so I can check out on their buy money and market wild love to all.

"JOHN."

It was in response to this telegram that the $5,000 was deposited.

Plaintiffs' counsel claim that a large number of errors were made by the trial judge, both in his rulings on the evidence and in his charge. Unless we are satisfied, after the examination of the entire cause, that it shall appear that the errors complained of have resulted in a miscarriage of justice, it becomes our duty to affirm the judgment of the lower court.

(a) The larger number of the errors claimed by plaintiffs' counsel can be classified in one group. They refer to the question of agency. We do believe that the judge erred in some of his rulings in regard to the question of agency. Too much stress was placed on the trial as to whose agent Rose was. If she were plaintiffs' agent, as it would appear, defendant would not be bound by what she said to plaintiffs. On the other hand, if she were the agent of defendant and secured the money as a loan, what she said to plaintiffs would be of importance.

When there is a disputed question of agency, if there is any testimony, either direct or inferential, tending to establish it, it becomes a question of fact for the jury to determine. *Hunt* v. *Stromberg Motor Devices Co.*, 215 Mich. 483. The court charged that there was no direct evidence of an agency between defendant and his wife, though he left the question of ratification for the jury's consideration.

There is no presumption whatsoever that Rose was the agent of defendant in obtaining the money. A wife is presumed to be the agent of her husband in making contracts for necessities, but for any other purpose, specific authority must be established. *Harris* v. *Smith*, 79 Mich. 54 (6 L. R. A. 702). The authority of a husband to act for his wife in

making a loan cannot be shown by his declarations alone, but it must be established like any other fact by competent evidence. *Three Rivers National Bank v. Gilchrist,* 83 Mich. 253. The converse is obviously true. Agency cannot be established by declarations of the agent alone. With the exception of the admissions, ratification, and promises of payment that plaintiffs claim defendant made, there is no evidence which would show that defendant authorized his wife to secure a loan for him. There is nothing in the letters and the telegram herein quoted that would show that Rose had any authority to make a loan. The telegram hereinbefore set forth indicates that the money was to be secured to purchase property for plaintiffs. If Rose, acting for her parents, sent the money as plaintiffs' contribution to the joint venture, or if, on behalf of her parents, she asked defendant to invest the money, she would be the agent of her parents. In any event, the burden of proof was upon the plaintiffs to show that Rose was the agent of defendant, and this burden was not sustained or even any direct proofs introduced except the claim of ratification, subsequent admissions, and promises to pay. Defendant strenuously denied any admissions, ratification, or promises of repayment.

The court properly held that the authority of Rose to act as agent for defendant could not be proven by her declarations alone. Plaintiffs attempted to show that the transaction was a loan, and, in order to make out their case, tried to show what they claimed Rose had said to them. The only way that testimony as to what Rose said would become at all admissible would be in the event that it were shown that Rose was defendant's agent. Plaintiffs sought to prove the agency by Rose's own dec-

larations. An agency for a specific purpose is not presumed. It must be established by tracing its source to some word or action of the alleged principal. *Fisk* v. *Liverpool, etc., Ins. Co.*, 198 Mich. 270. In *Barry & Finan Lumber Co.* v. *Insurance Co.*, 136 Mich. 42, this court said:

"It has been repeatedly held that an agent's declarations are not proof of his authority, and that his acts have no significance, unless recognized by the alleged principal in a way to be equivalent to a holding out that the relation of principal and agent exists, and a holding out of the requisite authority."

The trial judge, after admitting plaintiffs' testimony as to what Rose said in order to prove the agency, ordered it stricken out, on account of the rule that the declarations of an agent alone do not establish agency. The court erred in charging the jury as follows:

"In this case if Rose Smolenski communicated with the defendant John Smolenski, as he says, and requested him to buy for her folks, then she would be an agent of the plaintiffs in this case and not his agent."

In so doing, the trial judge did not apply the same rule, hereinabove set forth, against defendant as he did against plaintiffs. Rose's statements to defendant without some word or action of plaintiffs would not make her plaintiffs' agent. This was error.

Plaintiffs gave positive testimony that defendant recognized the transaction as a loan which he repeatedly promised to repay. This would amount to a ratification of the agency. The court properly recognized this claim of plaintiffs, and submitted the question of ratification to the jury. Before so doing, however, the court had stricken out the part of plain-

tiffs' testimony to the effect that Rose had secured the money as a loan. There being evidence of a ratification of the alleged agency, the jury were entitled to hear all of the other testimony in regard to the alleged agency. It is true that where a ratification is relied on, the proof of the dealings constituting ratification should be given first. In *Campbell* v. *Sherman*, 49 Mich. 534, it was held admissible to admit statements of an agent as to whom he was acting for and in what capacity he contracted, even in the absence of any showing of authority on his part, if ratification is subsequently shown. *Mally* v. *Excelsior Wrapper Co.*, 181 Mich. 568, approving this principle, quoted the following statement from *Hirschmann* v. *Railroad Co.*, 97 Mich. 384, 397:

" 'The declarations of an agent are not admissible to prove an agency, but when there is testimony to show ratification, or original authority, or a holding out to the world as having authority, such declarations accompanying the act are admissible to show in what capacity he contracted. *Campbell* v. *Sherman*, 49 Mich. 534, 536; *Haughton* v. *Maurer*, 55 Mich. 323; *Bacon* v. *Johnson*, 56 Mich. 182.' "

The case at issue, however, is not a case where it was sought to recover on breach of representations by an agent in a transaction in which the alleged principal had accepted the benefits of the transaction by ratification, but denied the authority of the agent to make the representations or warranties that were sued upon, as in the case of *Moynes* v. *Applebaum*, 218 Mich. 198. The testimony of plaintiffs as to Rose's declarations in order to prove her agency should have been admitted after there was proof of ratification. The jury were entitled to hear all of the facts, in view of the testimony of the ratification by defendant. Their verdict was against the plaintiffs. Notwithstanding the fact that they were entitled to all of the facts in regard to Rose's dec-

larations and statements, and it was error to exclude them under the circumstances, in view of the testimony in regard to the ratification, we do not believe it sufficiently prejudicial as to justify a reversal of the lower court's decision, and particularly so in view of the fact that the result of the jury's verdict would tend to establish the fact that there was no ratification by defendant.

Plaintiffs' counsel claimed other errors, which we do not deem necessary to discuss. Even if all of plaintiffs' contentions were correct, the errors would be nonprejudicial. A very careful reading of the record leads us to the conclusion that, had the errors not been made, had the evidence rejected been admitted, and that admitted but objected to been excluded, or the quoted part of the charge been omitted, the jury's verdict would have been the same. We, therefore, decline to disturb the judgment on account of these errors.

(b) Plaintiffs, on a motion for a new trial, brought up for the first time the claim that, under defendant's theory, there was a direct purchase by plaintiffs of an interest in land under an oral contract, which was void under the statute of frauds. They claim that the reason they did not raise this point theretofore was that they did not know of the case of *King* v. *Bird*, 245 Mich. 93, which had just been decided, and which held that moneys paid out for an interest in real estate, without any writing showing such interest, might be recovered as a loan because the transaction was void under the statute of frauds. *King* v. *Bird* did not set forth any new doctrine. The leading case on the subject in this State is *Nester* v. *Sullivan*, 147 Mich. 493 (9 L. R. A. [N. S.] 1106). It was there held that a partnership interest to buy and sell land generally falls

within the statute of frauds. In *Tuttle* v. *Bristol,* 142 Mich. 148, it was held that this was likewise true when but one transaction is involved and where it may be treated as a joint venture only. However, after the property in which it was sought to acquire an interest by an oral contract has been disposed of, the statute of frauds no longer applies. This question was fully discussed in *Stewart* v. *Young,* 247 Mich. 451, 455, from which we quote as follows:

"When real estate in which several persons are interested is conveyed to one or more of them upon a parol agreement that it is to be sold by the grantees and the proceeds divided between the parties in accordance with their respective interests therein, such contract after the sale of the property is valid and enforceable, is not within the statute of frauds, and, if the grantees after sale and receipt of the purchase price refuse to account to any and all persons in interest, they may maintain a bill for an accounting. *Carr* v. *Leavitt,* 54 Mich. 540; *Edinger* v. *Heiser,* 62 Mich. 598, 612; *Davis* v. *Gerber,* 69 Mich. 246; *Collar* v. *Collar,* 86 Mich. 507 (13 L. R. A. 621); *Petrie* v. *Torrent,* 88 Mich. 43; *Lasley* v. *Delano,* 139 Mich. 602; *Tuttle* v. *Bristol,* 142 Mich. 148; *Mullholland* v. *Patch,* 205 Mich. 490 (18 A. L. R. 468); *Bresee* v. *Robinson,* 236 Mich. 633. This is in accordance with the weight of authority. Browne, Statute of Frauds (5th Ed.), § 268, and cases cited; 29 Am. & Eng. Enc. Law (2d Ed.), p. 897; 27 C. J. p. 221.

" 'As a general rule a contract relating to the disposition of the proceeds of land, in case of its sale, is not one for an interest in the land and may be enforced, though not in writing, after the land has been sold.' 25 R. C. L. p. 540."

Even had the question of the statute of frauds been timely presented at the trial, the ruling of the

trial court would have been adverse to plaintiffs. The entire Florida purchase had been completed, the property had been disposed of, and the joint venture contract between the parties became valid and was not within the statute of frauds.

The decision of the lower court is affirmed, with costs to defendant.

North, C. J., and Fead, Wiest, Clark, McDonald, Potter, and Sharpe, JJ., concurred.