[No. 24985.   Department One.   April 18, 1934.]

THERESE MERCY, *Respondent,* v. A. I. HALL & SON, INC.,
*Appellant.*[1]

[1]Reported in 31 P. (2d) 1009.

*LaBerge, Cheney & Hutcheson,* for appellant.

*Richards, Gilbert & Conklin* and *I. J. Bounds,* for respondent.

MAIN, J.—This action was based upon a written guaranty. The cause was tried to the court and a jury, and, at the conclusion of the plaintiff's evidence, a motion to dismiss was presented and sustained as to the defendants George Shrive and wife. At the conclusion of all the evidence, the jury returned a verdict in favor of the plaintiff in the sum of $2,370. Motions for judgment notwithstanding the verdict and, in the alternative, for new trial were interposed, both of which were overruled. Judgment was entered upon the verdict, from which the defendant A. I. Hall & Son, Inc., appeal.

The facts are these: A. I. Hall & Son, Inc., was a corporation engaged in the wholesale jewelry business, with its principal office and business house in the city of San Francisco. It had a branch office and house in the city of Seattle, of which George H. Davis was the manager. George Shrive had an office in the city of Seattle, where he did business under the name of the Wholesale Adjustment Company, and was engaged in the business of collecting past due accounts for wholesale dealers. One of his clients was the appellant, and over a period of years he had collected accounts for that corporation in different parts of this and adjoining states. The Noble Jewelry Company was a corporation, and was engaged in the retail jewelry business in the city of Yakima.

June 24, 1929, the respondent, Therese Mercy, leased to the Noble Jewelry Company a storeroom for a

period of five years, at a rental of $375 per month, payable on the first day of each month. March 1, 1932, the Noble Jewelry Company was in arrears in rent in the sum of approximately one thousand dollars, and owed the appellant on account, for merchandise purchased, about eight thousand dollars. George Shrive went to Yakima for the appellant for the purpose of looking after the collection of this account. After he arrived there, he talked with the respondent, told her that the rent was too high, and that, if she would reduce the rental, he and the appellant would guarantee the payment of future rents. Shrive said that he would dispose of enough of the stock on the shelves to take care of the indebtedness, and that then the appellant would put in a better line of stock and the jewelry company could continue in business.

As a result of this conversation, an agreement was entered into between the respondent and the Noble Jewelry Company whereby the rent was reduced from $375 a month to $250 a month, as of August 1, 1931, and continuing to the expiration of the lease. It was also provided in the agreement, as a consideration for the reduction, that the Noble Jewelry Company should release to the respondent twenty per cent of the floor space. On the same day, March 1st, the following instrument was signed by Shrive:

"In consideration of Therese Mercy reducing the rental to be paid by the Noble Jewelry Company for the use of the store room on Lot 4 in Block 51, Yakima, for the balance of the period of her lease, from $375 per month to $250 per month, the undersigned hereby guarantees the payment of the rental of $250 per month for the balance of the period of the lease, and agrees to pay the same if said Noble Jewelry Company does not pay it.

"Dated this 1st day of March, 1932.

"A. I. Hall & Son, Inc.
"By Geo. Shrive."

Subsequent to this, Shrive put on an auction and sold a considerable portion of the stock.

Sometime in the latter part of March, another creditor brought a suit, and Shrive was named as receiver and continued in possession of the store as such until early in July, when the room was vacated.

April 22, 1932, one of the attorneys for the respondent wrote the appellant, at its branch office in Seattle, a letter in which the modification rental agreement was referred to and its terms were briefly set out. The guaranty agreement signed by Shrive was copied into the letter. The letter concluded by saying that the respondent desired to hear from the appellant personally on the matter. In reply to this letter, on April 25th, the appellant, through its Seattle office, sent the following letter:

"Gentlemen:

"We have your favor of the 22nd relative to the rent claims of the owner against Noble Jewelry Co. We are referring this to Geo. Shrive, 530 Burke Bldg., Seattle, who represents us fully in this matter. As Mr. Shrive is now in Yakima and will not return till the 27th, he will give this matter his attention on return, unless you have in the meantime established contact with him. Yours truly,

"Seattle Office
"A. I. Hall & Son, Inc.
"Geo. H. Davis."

This action, as above indicated, was based upon the written guaranty and upon the appellant's letter which contained the statement that Shrive "represents us fully in this matter."

The first question is whether Shrive had authority to sign the guaranty. It will be admitted that a collecting agent as such has no authority to sign a guaranty for his principal; but that rule is not here applicable. After the guaranty was signed, the appel-

lant, through the manager of its Seattle office, and with full knowledge of the facts, wrote the letter in which it was stated that Shrive had full authority to represent the appellant in the matter. Where an officer of a corporation, having authority to act, refers a person seeking to enter into a contract to another as the proper person to deal with, the latter has apparent authority to act.

In 2 Fletcher Cyclopedia Corporations, p. 270, it is said:

"Where an officer, having authority to act, refers a person seeking to enter into a contract to another as the proper person to deal with, the latter has apparent authority to act."

The reason for this rule is well stated in *Hunt v. Stromberg Motor Devices Co.*, 215 Mich. 483, 184 N. W. 459, where it is said:

"In this age of corporations, when so great a proportion of the country's business is carried on by them, often through corporations within corporations or subsidiary corporations which the others own and control, yet greater difficulties than formerly confront the outsider when called upon at his peril to verify the authority of their agents and officers in a particular transaction according to the narrow rules of record evidence once more generally recognized, and yet often though not always applicable. The circumstances of particular cases frequently present controlling facts of force materially modifying them."

The cases of *Pue v. Northern Pacific Ry. Co.*, 78 Mont. 40, 252 Pac. 313, and *Drew-Warren Radio Electric Co. v. Western Loan & Building Co.*, 148 Wash. 435, 269 Pac. 496, in principle, support the rule stated in Fletcher Cyclopedia Corporations, *supra.*

The case of *Morrison v. Tremont Trust Co.*, 252 Mass. 383, 147 N. E. 870, is not in point, because,

there, the one presuming to act was not held out by his principal

" . . . as its agent to act in a transaction of this kind, and therefore he could not be found to have been clothed with apparent authority to bind the defendant."

When Davis, the manager, wrote the letter which contained the statement that Shrive "represents us fully in this matter," with full knowledge of what Shrive had done, he thereby ratified for the appellant the guaranty which Shrive had signed.

The next question is whether the appellant corporation had the power or authority to become a guarantor. Even though it had no express authority conferred by its charter, it, nevertheless, had the power to enter into the contract of guaranty if such contract was reasonably necessary or usual in the conduct of its business, or was reasonably incidental thereto.

In 6 Fletcher Cyclopedia Corporations, p. 387, it is said:

"A corporation may guarantee or become surety upon the obligation of another when such a transaction is necessary in order to procure the payment of a debt due to it, . . . Accordingly, a guaranty executed to protect the corporation from a probable loss of a debt due it, and to aid in its collection, is within its power."

The case of *Henderson Tire & Rubber Co. v. Gregory,* 16 Fed. (2d) 589, 49 A. L. R. 1503, and *Woods Lumber Co. v. Moore,* 183 Cal. 497, 191 Pac. 905, 11 A. L. R. 549, as well as others that might be assembled, are to the same effect. The case of *Spencer v. Alki Point Transportation Co.,* 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058, recognizes the rule here stated, but does not apply it, because it could not be found from

the evidence in that case that the corporation had received a benefit.

In the present case, by reason of the modification of the lease, the appellant received a greater proportion of the debt which the Noble Jewelry Company owed it than it would otherwise have received. The guaranty was reasonably necessary and incidental to the business at hand, and the appellant, having received a benefit therefrom, cannot now dispute its liability.

The next question is whether Davis, as manager of the Seattle branch, had authority to ratify the guaranty which Shrive had signed. In *Keyes v. Citizens State Bank,* 128 Wash. 658, 224 Pac. 2, on this question it is said:

"Whether the president of the mica company had actual authority or not to assign the company's interest in the deposit is of very little moment, for by his actions the mica company was enabled to secure the completion of the building, which otherwise it could not have secured, and the company cannot now assert lack of authority after having taken the benefit of what it now contends was the unauthorized actions of its president, and cannot now repudiate that action. [Citing authorities.]"

The cases of *Stilwell v. Merriam Co.,* 127 Wash. 116, 219 Pac. 836, and *Peninsular Savings & Loan Ass'n v. Breier Co.,* 137 Wash. 641, 243 Pac. 830, are to the same effect.

It is said, however, that, since the ratification of Davis was not a part of the *res gestae,* it was of no effect. But this contention cannot be sustained. The appellant, having been benefited by the transaction, had the power to ratify. In *McKinley v. Mineral Hill Consolidated Mining Co.,* 46 Wash. 162, 89 Pac. 495, it was said:

"Furthermore, the evidence showed that the corporation had received the benefits by way of money

loaned or advanced by respondent, and by way of his labor and services, which made the consideration for the note. Under such circumstances the corporation will not be heard to say that it neither authorized nor ratified the execution of the note. [Citing authorities.]''

In the case of *Goodwin v. Stimson Mill Co.*, 95 Wash. 41, 163 Pac. 2, the principal had received no benefit in the matter then presented, and for this reason it was held that the declarations of the agent subsequently made and not a part of the *res gestae* were not binding upon the principal. The principal having been benefited, the manager had the power to ratify.

█ The next question is whether there was error in the introduction of evidence. On the trial, over objection, the respondent and another witness were permitted to testify as to what Shrive said and did after he came to Yakima. This evidence was properly admissible, because it bore upon the question of whether, when Shrive signed the guaranty, he was doing something which was reasonably necessary and incidental to the business which he was authorized to transact. The testimony was not introduced for the purpose of establishing agency. That had already been established by the approval of the guaranty and the law applicable thereto.

█ Finally, it is contended that the verdict and judgment, in any event, is too high. The theory of the action was that the rent could be recovered up to the time of the trial. The court instructed the jury that if, under the evidence and the instructions, a verdict should be returned for the respondent, it should be in the sum of $2,370. No exception was taken to any other instruction given or refused. From the facts and the instructions given, it appears that no recovery was allowed for any sum which had accrued prior to

March 1, 1932, or for the three months' period during which the receiver paid the rent.

It appears to be contended that the respondent should have been charged with the rent for twenty per cent of the floor space which was set over to her in the agreement above mentioned. But that agreement does not so provide. She did account for the rent which had been received from eighty per cent of the floor space, and this, when taken from the total amount of the rent due, left a sum as great or greater than that for which the verdict was found under the instruction of the court.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, STEINERT, and BLAKE, JJ., concur.