[No. 13095.  Department Two.  June 6, 1916.]

## C. E. BARTHOLOMEW, *Appellant,* v. THE TOWN OF SPRINGDALE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—OFFICERS — SALARY — QUALIFICATION — BOND—APPROVAL.  Failure of the council to approve the bond of one appointed and acting as town marshal does not prevent his becoming an officer *de jure* and entitled to the salary, no other person being appointed or serving during the term; especially since Rem. & Bal. Code, § 7722, merely requires the marshal to execute a bond to the town before entering upon his duties and not that bond shall be approved by the council before entering upon his duties; the bond having been delivered to the clerk and never rejected.

OFFICERS—SALARY—DE JURE OFFICER—QUANTITY OF SERVICES.  The right of a *de jure* officer to his salary is not affected by the quantity of the services rendered, in the absence of an abandonment of the office.

Appeal by plaintiff from a judgment of the superior court for Stevens county, Jackson, J., entered January 25, 1915, upon the verdict of a jury rendered in favor of the plaintiff, allowing partial recovery in an action to recover a salary. Reversed.

*Jesseph & Bourland,* for appellant.

*J. B. Slater* and *Carey & Johnson,* for respondent.

PARKER, J.—The plaintiff, C. E. Bartholomew, seeks recovery of the sum of $720 from the defendant, Town of Springdale, which he claims as the salary attaching to the office of marshal of the town while he was the incumbent of that office for the period of one year.  Trial before the superior court of Stevens county sitting with a jury resulted in verdict and judgment for the sum of $300, from which the plaintiff has appealed to this court.

Counsel for appellant contend he is entitled to have judgment rendered in his favor for the full amount of salary claimed by him, and that the trial court erred in refusing to

[1] Reported in 156 Pac. 1090.

so rule, as a matter of law, upon motion made by his counsel for a directed verdict immediately following the announcement of counsel for respondent that they rested their case.

We note that, after the denial of this motion by the court, some rebuttal evidence was introduced in appellant's behalf, and also some sur-rebuttal evidence introduced in respondent's behalf; but none of this additional evidence, as we view it, had any bearing whatever upon the undisputed facts which we regard as determinative of the question of whether or not appellant is entitled to judgment as a matter of law, as in effect asked for in his motion for directed verdict. Therefore, if the trial court committed error in refusing to direct a verdict in appellant's favor when requested so to do, such error was not cured by anything appearing in the rebuttal and sur-rebuttal evidence introduced thereafter.

The undisputed facts determinative of appellant's right to judgment as a matter of law may be summarized as follows: On February 3, 1912, the mayor of the Town of Springdale appointed appellant marshal of the town. This appointment was evidenced by a communication addressed to appellant by the mayor stating "I hereby appoint you town marshal of the Town of Springdale, Wash." This appointment was unqualified by other language and is silent as to the time it became effective, so far as the giving of bond and taking of the oath of office by appellant is concerned. At that time, there was in force in the town an ordinance fixing the salary of the town marshal at $60 per month, and there was also at that time in force an ordinance fixing the amount of the official bond required to be furnished by the town marshal at $300. On the same day, appellant executed and deposited with the town clerk his official bond in the sum of $300, conditioned as the ordinance and Rem. & Bal. Code, § 7722 (P. C. 77 § 371), require. The bond was executed by two sureties with appellant, who, by affidavit in due form indorsed thereon, stated they were each worth $600 over and above

all liabilities, in separate property situated within the state
not exempt from execution.   There was also indorsed upon
this bond appellant's oath of office in due form, sworn to be-
fore a notary public.   Some controversy arose as to whether
or not this bond was formally approved by the town council
as required by Rem. & Bal. Code, § 7722.   The evidence upon
this question was rejected, however, by the trial court, evi-
dently because the approval claimed by appellant to have
been had was at a meeting of the council where there was
not a quorum of qualified members of the council present.
We will therefore proceed as though the town council never
formally approved the bond by proper evidencing of such
approval upon their minutes or by indorsement upon the
bond.   From that time until February 3, 1913, no other
person was appointed to the office of marshal.   During all
this period of one year, appellant claimed and held himself
out to be marshal of the town, and at least in some sub-
stantial measure performed the duties pertaining to that of-
fice.   There is some conflict in the evidence as to the extent
of such performance, but that no one else was legally author-
ized to perform or performed such duties is certain.   We
may add that appellant had possession of the personal prop-
erty of the town used by the incumbent of the office, such as
star, handcuffs, club, etc.   It also inferentially appears that
he had possession of the town jail.   It is undisputed in any
event that he put persons in the jail, assuming in doing so
to act as marshal.

Rem. & Bal. Code, § 7722, relating to the qualifications of
officers of towns of the fourth class, to which class the town
of Springdale belongs, so far as necessary to here notice the
provisions thereof, reads:

"The clerk, treasurer, and marshal shall respectively, be-
fore entering upon the duties of their respective offices, exe-
cute a bond to such town in such penal sum as the council
by ordinance may determine, conditioned for the faithful per-
formance of his duties;  .  .  .  such bonds shall be approved

by the council. . . . Every officer of such town, before entering upon the duties of his office, shall take and file with the clerk the constitutional oath of office."

It is plain from a reading of this section that appellant in receiving his appointment, depositing with the town· clerk his bond and oath of office, and the entering upon his duties as marshal, became an officer *de jure* with all the powers and entitled to all the emoluments of the office, unless we are to hold otherwise because of the fact that his bond was not formally approved by the town council. That the failure on the part of the council to formally approve his bond did not prevent him from becoming an officer *de jure*, we think is determined by the decision of this court in *State ex rel. Chealander v. Carroll*, 57 Wash. 202, 106 Pac. 748. The office there involved was civil service commissioner of the city of Seattle. Chealander, the appointee, did not then, nor thereafter, give and file the bond required by the city charter before entering upon the duties of such office. Touching the question of whether or not Chealander was a *de jure* or merely a *de facto* officer, Justice Fullerton, speaking for the court, at page 208 of the decision, said:

"The failure to give a bond does not render an officer duly elected or appointed a *de facto* officer. He is a *de jure* officer holding by a defeasible title. *Foot v. Stiles*, 57 N. Y. 399. The giving of a bond is a mere ministerial act for the security of the government, and not a condition precedent to the officer's authority to act, unless especially made so by statute. *Glavey v. United States*, 182 U. S. 595. The courts generally hold that, even though the statute expressly provides that, upon a failure to give a bond within the time prescribed, the office shall be deemed vacant and may be filled by appointment, the default is a ground for forfeiture only, not forfeiture *ipso facto*, and that if, notwithstanding such default, the state or other power sees fit to excuse the delinquency by granting the officer his commission, the defects of his title are cured, and it is a title *de jure* having relation back to the time of his election or appointment."

The earlier decision of *State ex rel. Lysons v. Ruff*, 4 Wash. 234, 29 Pac. 999, 16 L. R. A. 140, lends support to this view.

Now, § 7722, above quoted, requires only that the marshal shall *"execute a bond to such town"* before entering upon the duties of his office, not that such bond shall be approved by the council before entering upon the duties of his office. Manifestly, then, when appellant so executed and delivered to the town clerk his official bond, sufficient upon its face as to form and qualification of sureties, as this bond plainly was, he had performed every duty required of him by § 7722 as a prerequisite to his right to enter upon the duties of his office. Plainly the delivery to the town clerk was a delivery to the town, and also a delivery to the council for its approval. It is not claimed that the council ever affirmatively rejected this bond or demanded of appellant another or different bond. It may be that the council could have required another bond, so far as the sufficiency of the sureties are concerned, and that the failure on the part of appellant to furnish a bond such that the qualifications of the sureties would meet the council's approval would be cause for his removal from the office of marshal; but that is foreign to the question of appellant then being the lawful incumbent of the office of marshal. It seems quite clear to us that appellant was, during the year for which he claims salary, the marshal *de jure.*

It seems plain from the authorities that the quantity of service rendered by a *de jure* officer, or even the question of neglect to render the official services required of him, in any event when such failure falls short of an actual abandonment of the office, is wholly immaterial to the question of his right to the salary or compensation which the law attaches to the office; this, manifestly upon the theory that the question of his right to compensation is not a question of contract. The question was considered learnedly and at some length in the supreme court of Iowa in *Bryan v. Cattell*, 15 Iowa 538.

That case involved an attempt to collect salary by a district attorney from the state, the auditor declining to issue the warrant therefor because of his absence from the state and neglect of the duties of that office. Recognizing the possible wrong and injustice to the state, but there being no statute providing for the deduction or forfeiture of salary for the cause which there appeared and which might be considered as morally entitling the state to resist payment of the salary, the court observed, on page 552, as follows:

"It must be remembered, however, that we are dealing with a practical, and not an abstract, question. And practically, the difficulty in the view suggested is, that it would be impossible to tell where the true line should be drawn. That is to say, how long an absence from official duties—how great delinquency shall work a forfeiture of salary. In the absence of statute, shall it be one day, or one week, or one month, or one year? Where shall faithfulness end, and delinquency begin? Add to these considerations the fact, that it is frequently impossible to tell to what extent the services of the officers were necessary, at the time covered by the supposed delinquency, and the propriety of the rule which entitles the officer to his salary so long as he remains in office, becomes reasonably manifest. The better and safer rule doubtless is, that if he is in point of law actually in office, he has a legal right to the salary pertaining to it. His conduct may be such as to render him liable to removal, but when the statute makes no deduction for absence or neglect of duty, and the state takes no step as a consequence of such absence or delinquency, we suppose it is the legal right of the officer to demand the full salary allowed him by law."

The reason of this doctrine is rendered evident by the general rule stated in Throop on Public Officers, in § 443, as follows:

"It has been often held, that an officer's right to his compensation does not grow out of a contract between him and the state, or the municipality by which it is payable. The compensation belongs to the officer, as an incident of his office, and he is entitled to it, not by force of any contract, but because the law attaches it to the office."

See, also, Mechem, Public Officers, § 855, and 29 Cyc. 1423.

The undisputed facts which bring this case within this doctrine are: Appellant's appointment, his bond and official oath on file with the town clerk, which are record facts; and also the undisputed fact that appellant held himself out and assumed to act as town marshal, having possession of such property of the town as usually attaches to such an office. The conflicting evidence has only to do with the extent of the official duties performed by appellant as town marshal, but even as to that, there is no evidence in this record tending to show that he neglected to perform all such duties as he was called upon to perform or that were necessary for him to perform.

We cannot escape the conclusion that appellant was the town marshal *de jure* and, as such, entitled to the salary which by law attached to that office during the year claimed, that he was entitled to the ruling for an instructed verdict as asked for when respondent rested its case, and that the rebuttal and sur-rebuttal evidence thereafter introduced did not cure the error of the court in denying appellant's motion for a directed verdict.

Some claim is made in appellant's complaint touching the matter of interest upon his unpaid salary. The question is not, however, presented here by either argument or citation of authority. We therefore give it but passing attention without assuming to lay down any rule of law relative to cases of this kind, and conclude that appellant is entitled to interest upon his year's salary of $720 at the legal rate of six per cent from the 13th day of September, 1913, the date of filing his complaint in this action. He may be technically entitled to interest commencing at an earlier date, but under all the circumstances, we conclude to fix this as the date of the commencement of his interest.

The judgment is reversed, and the cause remanded to the superior court with direction to enter judgment in appel-

lant's favor and against respondent for $720, with legal interest thereon from September 13, 1913.

MORRIS, C. J., MAIN, HOLCOMB, and CHADWICK, JJ., concur.