[No. 15368.   Department Two.   October 8, 1919.]

THE STATE OF WASHINGTON, *on the Relation of J. B. McMillan, Appellant,* v. JAMES A. MILLER, *as Auditor of Whatcom County, Respondent.*[1]

LIMITATION OF ACTIONS (17-1)—IMPLIED CONTRACTS—COUNTIES—OFFICERS—RECOVERY OF COMPENSATION FOR SERVICES.   Upon the rendition of services by a county commissioner for which the law fixed an unchanged compensation during the whole period, there arises an implied obligation of a contractual nature to pay such compensation, governed by the three-year statute of limitations, Rem. Code, § 159, for actions on contracts, express or implied.

SAME (36)—ACCRUAL—MUNICIPAL OBLIGATIONS—SALARY OF OFFICERS.   Under Rem. Code, § 4075, providing that the salary of county officers shall be paid and warrants therefor drawn monthly on the first Monday of each month, a right of action therefor accrues each month, notwithstanding the salary is fixed by Id., § 4037, at $1,800 "per annum."

Cross-appeals from a judgment of the superior court for Whatcom county, Hardin, J., entered February 8, 1919, upon findings favorable to the plaintiff, in an action for a writ of mandate to compel the issuance of a salary warrant.   Affirmed.

*Walter B. Whitcomb,* for appellant.

*Loomis Baldrey* and *Frank W. Radley,* for respondent.

PARKER, J.—The relator, McMillan, commenced this action in the superior court for Whatcom county, seeking a writ of mandate to compel the auditor of that county to issue to him a warrant in compliance with an order of allowance made by the board of county commissioners for a balance of $3,050, claimed to be due him for services rendered as county commissioner during the period of approximately four years from

[1]Reported in 184 Pac. 352.

January, 1915, to October, 1918, inclusive. The superior court awarded recovery to McMillan in the sum of $2,400, and caused to be issued its writ of mandate directing the county auditor to issue a warrant accordingly. The court rested its judgment upon the theory that all but $2,400 of McMillan's claim was, at the time of its allowance by the board and at the time of the commencement of this action, barred by the three-year statute of limitations. From this disposition of the cause, McMillan has appealed, contending that no part of his claim was barred at the time of its allowance by the board and the commencement of this action. The auditor has also appealed, contending that the two-year statute of limitations is controlling in this case, and that all of that portion of McMillan's claim accruing more than two years prior to its allowance by the board and commencement of this action is barred.

The controlling facts are not in dispute and may be summarized as follows: From January 11, 1915, until the commencement of this action in the superior court on December 3, 1918, McMillan was a duly elected, qualified and acting commissioner of Whatcom county. That county was at all the times in question a county of the fifth class, and it is here conceded by counsel on both sides that McMillan was entitled to receive for his services as such commissioner compensation payable by the county at the rate of $1,800 per year, as provided by Rem. Code, § 4037. For services rendered by McMillan as commissioner during each of the months from January, 1915, to October, 1918, he was, between the first and seventh days of each of the following months, respectively—and we assume on the first Mondays thereof—paid for such services, upon a per diem basis, sums averaging $83.33 for each of such previous month's services. During his three years'

service from November, 1915, to October, 1918, inclusive, he was so paid for eleven months' services in each of those years $85 per month, and for one month's service in each of those years $65 per month, which, it will be noticed, resulted in his receiving $1,000 for services rendered in each of those three years, being $800 less than he was in law entitled to in each of those years. He was paid in substantially the same manner as to times and amounts of payments for the portion of the period here in question, from January to October, inclusive, in the year 1915. McMillan was so paid for his services as commissioner because of what is here conceded to be a mistake of law on the part of the county officers, including himself, that a county commissioner of Whatcom county was entitled to receive compensation at the rate of five dollars per day for services actually rendered, and in no event to exceed $1,000 in any one year. On December 2, 1918, McMillan filed with the board of county commissioners his claim for a balance of $3,050, claimed to be due him for services rendered by him as commissioner for the whole period of approximately four years here in question. The claim being allowed by the board, and the auditor having refused to issue a warrant in payment thereof as ordered by the board, this action was commenced by McMillan on December 3, 1918.

The only provisions of our statutes of limitation which could have any application here are, referring to sections of Rem. Code, the following:

"Sec. 155. Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, . . .

"Sec. 159. Within three years. . . . 3. An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . .

"Sec. 165. An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

We shall first determine whether the two-year statute or the three-year statute is controlling as to the limit of time within which McMillan was required to seek recovery in court of his compensation following the accrual of his cause or causes of action therefor. This question arises upon the contention here made on behalf of the auditor that the trial court erred to the prejudice of the county in awarding McMillan the whole of the unpaid portion of his compensation at $800 per year for the three-year period from November, 1915, to October, 1918, inclusive. This contention is rested upon the theory that the obligation on the part of the county to pay McMillan compensation for his services as commissioner, even after the rendering of such services, is not contractual in its nature, either express or implied, and that therefore the two-year statute is controlling. Assuming, then, for argument's sake, that the words "contract or liability, express or implied," found in the three-year statute above quoted, refers exclusively to contractual liabilities, our problem is reduced in its last analysis to the question of whether or not the obligation of the county to pay McMillan for his services, after their rendition, became contractual in its nature. Plainly, if such be the nature of the obligation, the three-year statute is controlling in this case, while if the obligation is not contractual in its nature, the two-year statute is controlling. Counsel for the auditor invoke the general rule that the election or appointment of a public officer does not create any contractual relationship between such officer and the state, county or municipality under which he holds his office. While this is a well-established rule of law by all of the authorities in so far as they

have come to our notice, it seems to be equally well established by no less an authority than the supreme court of the United States that, upon the rendition of services by a public officer, for which services compensation has been prior to the rendition thereof, fixed by or in pursuance of law, and, so fixed, remains unchanged during the whole of the period during which such services are rendered, there does arise an implied obligation of a contractual nature on the part of such state, county or municipality to pay for such services at the rate of compensation so fixed, in the sense that such obligation cannot be impaired without violating the guaranty of § 10, art. 1 of the constitution of the United States that ''No state shall . . . pass any . . . law impairing the obligation of contracts . . .''

In the case of *Fisk v. Jefferson Police Jury,* 116 U. S. 131, the supreme court of the United States, having under consideration the claimed right of Fisk, a district attorney of the state, to have levied a tax by the police jury (which was the parish tax-levying body corresponding to our county commissioners) to pay a judgment rendered in his favor in the state court for compensation due him from the parish, to which he was entitled under the laws of the state in force at the time of the rendition of his services, which obligation on the part of the parish was in effect impaired by a subsequent amendment to the constitution of the state, in that the tax levying powers of the police jury were so impaired as to in effect prevent raising sufficient funds, as it was claimed, to pay such judgment; and the courts of the state for that reason having denied to Fisk the relief prayed for as against the police jury and the parish, Justice Miller, speaking for the supreme court of the United States—the cause being in that court on writ of error to the supreme court of the state of Louisiana—said:

"In answer to the argument that, as applied to plaintiff's case, the constitutional provision impaired the obligation of his contract, the Supreme Court decided that his employment as attorney for the parish did not constitute a contract, either in reference to his regular salary, or to his compensation by fees. And this question is the only one discussed in the opinion, and on that ground the decision rested.

"It seems to us that the Supreme Court confounded two very different things in their discussion of this question.

"We do not assert the proposition that a person elected to an office for a definite term has any such contract with the government or with the appointing body as to prevent the legislature or other proper authority from abolishing the office or diminishing its duration or removing him from office. So, though when appointed the law has provided a fixed compensation for his services, there is no contract which forbids the legislature or other proper authority to change the rate of compensation for salary or services after the change is made, though this may include a part of the term of the office then unexpired. *Butler v. Pennsylvania,* 10 How. 402.

"But, after the services have been rendered, under a law, resolution or ordinance which fixes the rate of compensation, there arises an implied contract to pay for those services at that rate. This contract is a completed contract. Its obligation is perfect, and rests on the remedies which the law then gives for its enforcement. The vice of the argument of the supreme court of Louisiana is in limiting the protecting power of the constitutional provision against impairing the obligation of contracts to express contracts, to specific agreements, and in rejecting that much larger class in which one party having delivered property, paid money, rendered service, or suffered loss at the request of or for the use of another, the law completes the contract by implying an obligation on the part of the latter to make compensation. This obligation can no more be impaired by a law of the state than that arising on a promissory note.

"The case of Fisk was of this character. His appointment as district attorney was lawful and was a request made to him by the proper authority to render the services demanded of that office. He did render these services for the parish, and the obligation of the police jury to pay for them was complete. Not only were the services requested and rendered, and the obligation to pay for them perfect, but the measure of compensation was also fixed by the previous order of the police jury. There was here wanting no element of a contract. The judgment in the court for the recovery of this compensation concluded all these questions. *Hall v. Wisconsin,* 103 U. S. 5, 10; *Newton v. Commissioners,* 100 U. S. 548, 559.

"The provision of the constitution restricting the limit of taxation, so far as it was in conflict with the act of 1871, and as applied to the contract of plaintiff, impaired its obligation by destroying the remedy *pro tanto.*

"It is apparent that if the officers whose duty it is to assess the taxes of this parish, were to perform that duty as it is governed by the law of 1871, the plaintiff would get his money. If not by a first year's levy, then by the next. But the constitutional provision has repealed that law, and stands in the way of enforcing the obligation of plaintiff's contract as that obligation stood at the time the contract was made.

"It is well settled that a provision in a state constitution may be a law impairing the obligation of a contract as well as one found in an ordinary statute. We are of opinion, therefore, that as it regards plaintiff's case this restrictive provision of the constitution of 1880 does impair the obligation of a contract. *Von Hoffman v. Quincy,* 4 Wall. 535; *Nelson v. St. Martin's Parish,* 111 U. S. 716.

"The judgments of the supreme court of Louisiana are reversed, and the cases are remanded to that court for further proceedings not inconsistent with this opinion."

That decision was not dissented from by any of the justices, and we think has not since its rendition been

in the least impaired as an authoritative declaration that, upon the rendition of services by a public officer under such circumstances, the obligation to pay him therefor becomes contractual in its nature. . Counsel for the auditor relies upon the later decision of the United States supreme court in *Morley v. Lake Shore & Michigan Southern R. Co.,* 146 U. S. 162, as in effect modifying its views so expressed in the above quoted language. That case, however, involved only the question of whether or not the obligation to pay a statutory prescribed rate of interest on judgments rendered in a state court was contractual in its nature, in the sense that such obligation could not be impaired by a change of the statute after the rendition of such judgment, as to future accruing interest thereon. It was held that such rate could be so changed without impairing any contractual obligation, because such obligation was purely statutory and not contractual. We do not think that decision evidences any change of view of the supreme court of the United States as to the contractual nature of an obligation arising in favor of an officer to pay him for services, upon the rendition of such services, as expressed in the above quoted language from the *Fisk* case. We note that the decision in the *Morley* case was dissented from by three of the justices. The following decisions all seem to recognize that the obligation to pay an officer for services rendered, there being a legally fixed compensation while such services are being rendered, is an implied contractual obligation which arises upon the rendering of the services, though also recognizing the general rule that there does not arise any contractual relation of any nature between the officer and the state, county or municipality which he serves, by virtue of the mere fact of his appointment or election: *County of Lancaster v. Brinthall,* 29 Pa. St. 38; *Smith v. Mayor, etc., of*

*New York,* 37 N. Y. 518; *City of Hoboken v. Gear,* 27 N. J. L. 265, 278; *Locke v. City of Central,* 4 Colo. 65, 34 Am. Rep. 66.

In the last cited case, quoting from the New Jersey case, it is said:

"An appointment to a public office, therefore, either by the government or by a municipal corporation, under a law fixing the compensation and the term of its continuance, is neither a contract between the public and the officer that the service shall continue during the designated term, nor that the salary shall not be changed during the term of office. It is, at most, a contract that while the party continues to perform the duties of the office he shall receive the compensation which may from time to time be provided by law."

There can be found expressions in the text books and decisions, and even in our own decisions of *Bartholomew v. Springdale,* 91 Wash. 408, 156 Pac. 1090, Ann. Cas. 1918B 432, and *Rhodes v. Tacoma,* 97 Wash. 341, 166 Pac. 647, seemingly out of harmony with this view of the law; but we think, when critically read, such expressions will have been found to have been used in a very general sense without reference to or thought of the particular problem with which we are here confronted. As to such expressions used in our own decisions, we think none of them was in such connection with facts under consideration as to become *stare decisis* and controlling in our present inquiry.

Counsel for the auditor calls our attention to, and places reliance upon, our decision in *Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928, wherein we held that the obligations of each county to the other touching their property rights and debt obligations, upon the creation of Grant county from a portion of the territory of Douglas county, were not contractual, but purely statutory in their nature, being prescribed and measured by the terms of the act of

the legislature creating Grant county from a portion
of the territory of Douglas county; and hence that the
two-year statute of limitations controlled in so far as
either county had the right to resort to the courts to
enforce settlement of its property rights and debt obli-
gations as between themselves. We do not think that
decision is controlling in this case, since the division
of Douglas county and the creation of Grant county
was not a matter of contract in any sense, on the part
of either, nor could one become legally liable to the
other upon the claim involved in that action save by
virtue of the statute creating Grant county from a por-
tion of the territory of Douglas county.

We now feel constrained to hold, in the light of the
decision of the supreme court of the United States
above quoted from, notwithstanding expressions in the
authorities and even in our own decisions seemingly
somewhat out of harmony therewith, that the obliga-
tion on the part of Whatcom county to pay McMillan
for services rendered by him as county commissioner
became contractual in its nature upon the rendition of
such services, and that therefore the three-year statute
governs as to the time within which he was required
to seek recovery in the superior court upon his cause
or causes of action for compensation for his services.

When did the statute start to run as against Mc-
Millan? While Rem. Code, § 4037, fixes the compen-
sation of county commissioners at $1,800 per annum
for counties of the class to which Whatcom county be-
longs, in § 4075, Rem. Code, we read:

"The salaries of such officers named in this act as
are entitled to salaries shall be paid monthly out of
the county treasury, and from the funds hereinbefore
provided, and it shall be the duty of the county auditor,
on the first Monday of each and every month, to draw
his warrant upon the county treasurer in favor of

each of said officers for the amount of salary due him, under the provisions of this act, for the preceding month: *Provided,* The county commissioners shall have entered an order on the record journal empowering him so to do.''

This language, we think, renders it plain that there accrued to McMillan upon the first Monday of each month the right to receive a warrant in payment for his previous month's services. It is true this section authorizes the county auditor to issue such warrant only upon order of the county commissioners, but it is plain, we think, that, if the county commissioners neglected to make such an order so as to authorize the issuance of such a warrant on that day, he would be entitled to seek relief in the courts compelling them to make such order, as well as to compel the auditor to issue a warrant in pursuance thereof. In other words, it was upon the first Monday of each month that his right of action accrued entitling him to seek relief in the courts to recover his salary earned during the previous month. It is elementary law, as stated in 17 R. C. L. 749, that

''. . . a cause of action accrues the moment the right to commence an action comes into existence.''

We make these observations in response to the contention that the statute did not commence to run until the end of each year because the salary is referred to in § 4037, Rem. Code, as being ''eighteen hundred dollars per annum.'' We conclude that a cause of action accrued to McMillan on the first Monday of each month for compensation for his previous month's services, and that § 4037, Rem. Code, only controls the rate of compensation.

Since it appears that McMillan's causes of action for each month's salary for services rendered during the three-year period from November, 1915, to October,

1918, inclusive, accrued within three years preceding the commencement of this action, and there is still due him from the county for such services the sum of $2,400, and the balance of his claim is barred by the three-year statute, we conclude that the judgment of the superior court awarding him recovery in that sum must be affirmed. Since both parties have appealed and neither been successful here, neither will be awarded costs in this court.

HOLCOMB, C. J., FULLERTON, BRIDGES, and MOUNT, JJ., concur.