MARION STEAM SHOVEL CO. v.

COLUMBUS, D. & M. ELEC. CO.

Ohio Appeals, 3rd Dist., Marion Co.

No. 687. Decided May 9, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**PUBLIC UTILITIES.**
(470 E) Failure to file contract, for electrical energy supply, with public utilities commission and secure its approval, precludes court from construing such contract.

Appeal from Common Pleas.

Decree for defendant.

Guthery, Strelitz & Guthery, Marion, for Shovel Co.

William P. Moloney, Marion, for Columbus, D. & M. Elec. Co.

STATEMENT OF FACTS.

The action was originally brought in the Common Pleas to restrain the defendant from discontinuing its service of electrical energy at plaintiff's manufacturing establishment in Marion, and, also, to compel defendant to continue to furnish service in accordance with the terms of a certain written contract between plaintiff's assignor and defendant. That court dismissed the petition and entered a judgment for defendant.

Plaintiff is an Ohio corporation and the owner of a large manufacturing establishment at Marion, Ohio. Defendant is an Ohio corporation and the owner of a large electrical power plant at Scioto, Ohio.

It appears that on September 16, 1921, at Marion, the old shovel company and the defendant entered into a written contract for the supplying of electrical energy by defendant to the old shovel company at its manufacturing plant at Marion, According to this contract the defendant agreed to sell and deliver a certain quantity of electrical energy at a certain rate for a certain period of time, and, in consideration whereof, the old shovel company agreed to accept such service during the designated time and monthly pay for it at the stipulated price.

During the month of July, 1927, there were a number of power interruptions of less duration than a day at plaintiff's plant, caused by unavoidable accidents, such as lightning striking the lines of defendant which carried the power to plaintiff's plant. In August, 1927, the defendant rendered a statement to plaintiff for the service and energy furnished under the contract for the month of July, 1927. Upon receipt of the July statement, plaintiff took credit for the power interruptions and remitted by check to the defendant, the balance of the July statement. Defendant refused to accept the amount tendered, returned the check given in payment of said statement, and demanded that plaintiff pay to it the full amount of the bill rendered. Plaintiff refused to pay the full amount of the statement, again remitted the check which had been returned to it by the defendant, and demanded that the controversy be submitted to arbiters, as provided for in the contract. Defendant refused to arbitrate, and on August 17, 1927, in writing, notified plaintiff that it purposed, within thirty days thereafter, to discontinue its service. Upon receipt of this notice plaintiff began, in the Court of Common Pleas, this action.

JUSTICE, J.
The controversy here primarily exists by reason of the parties placing different interpretations on section 14 of the contract. This section, so far as pertinent here, provides:

"However should the electric company by reason of unavoidable accidents temporarily discontinue service for any part of one working day, then there shall be credited to the shovel company for each day or fraction thereafter, that said interruption of service exists, a sum equal to two thirtieths of the monthly bill rendered for the month in which said interrupted service occurs, the excess of said credit if any there be, over said monthly bill to be applied on any subsequent monthly bills rendered hereunder to the Shovel Company."

It is the contention of the plaintiff that, under this contract, it is entitled to a credit of two-thirtieths of the monthly bill for any interruption or interruptions that occur in any one day. It is the contention of the defendant that under this contract, plaintiff is not entitled to credit unless the interruption covers at least one full day.

We are asked to interpret said section 14 but, as we see this case, it is of no moment here which interpretation is correct, because plaintiff cannot prevail in this suit, even if it has tendered to the defendant all that is due and owing to it under the contract, for the reason that plaintiff has failed to allege and prove that the contract in question was filed with and approved by the Public Utilities Commission.

Section 614-17, so far as applicable here, provides that:

"Nothing in this act shall be taken to prohibit a public utility from entering into any reasonable arrangement with its customers * * * or providing for a minimum charge for service to be rendered * * *. No such arrangement * * * minimum charge * * * shall be lawful unless

the same shall be filed with and approved by the commission."

Obviously, the parties had a right, under this statute, to enter into the contract in question. But, after the contract was executed it was their duty, before entering upon its performance, to file it with the commission and obtain its approval thereto, because until so filed and approved, the contract is by this statute, declared to be unlawful.

In the instant case, plaintiff sues on the contract. There is, of course, no presumption that the contract was filed with and approved by the commission. Clearly, in the absence of an averment and proof that the requirements of the statute have been complied with, plaintiff is not entitled to relief at our hands. To hold otherwise would defeat the purpose for which the statute was enacted, namely to put all such contracts under the supervision of The Public Utilities Commission.

Holding these views, it follows that the petition should be dismissed, and that an entry should be entered as was entered in the Court of Common Pleas. Decree accordingly.

(Before Judges Crow, Hughes and Justice.)