[No. 34178. Department Two. October 31, 1957.]

PAUL H. GRAVES *et al., Respondents,* v. CASCADE NATURAL
GAS CORPORATION, *Appellant.*[1]

[1]Reported in 316 P. (2d) 1096.

*Halverson, Applegate & McDonald,* for appellant.

*Brown, Hovis & Cockrill,* for respondents.

ROSELLINI, J.—This is a suit to recover legal fees and moneys expended on behalf of the Northwest Cities Gas Company. Some time after the services were rendered, the Northwest Cities Gas Company merged with the defendant, which assumed its liabilities.

The complaint filed on September 29, 1952, alleged that, pursuant to specific terms of employment, between the 25th day of April, 1949, and the 28th day of October, 1949, the plaintiffs performed services for the defendant of the reasonable agreed value of $5,792.76, and that during this period the plaintiffs expended moneys for the use of the defendant, at the defendant's special instance and request, in the amount of $868.55; that the sum of $312.50 had been paid on this account on July 14, 1949, and the further sum of $1,001.81 on the 21st day of July, 1949; and that the balance of $5,347 had not been paid, although due demand had been made.

The defendant denied liability on two grounds: first, that the plaintiffs had failed to have their contract with the defendant submitted to the public service commission for approval, as required by law, and that their failure to do so had deprived the defendant of the right to treat the payments made as operating expenses for rate or valuation purposes, and second, that the claim was barred by the statute of limitations. The defendant prayed for recovery of the amount which had been paid on the account.

The action was tried to the court, which found that the agreement had been made as alleged by the plaintiffs, that the fee was reasonable, and that the balance alleged had not been paid. In regard to the statute of limitations, the court

found that the parties had agreed upon a per diem fee, to be computed from the 26th of one month through the 25th of the following month and to be paid on rendition of a statement on or about the first of each month. Applying the three-year statute to this arrangement, the court concluded that that portion of the fee which fell due before the 29th of September, 1949, was barred. Judgment was entered for the plaintiff in the amount of $3,068.60, together with interest at the legal rate on the amount of $2,869.75 from October 5, 1949, and on the amount of $198.85 from November 1, 1949.

Both parties have appealed. The cross-appeal must be dismissed, however, since the appeal bond was not filed within ten days after notice of cross-appeal—a jurisdictional requirement under the rules as they existed at that time.

Error is assigned to the finding that the agreement had been made as alleged. It is urged that, under the evidence, the trial court was obliged to find that the person who acted on behalf of the corporation in making the contract lacked authority to do so, and that the court was also obliged to conclude that the plaintiffs were "affiliated interests," within the meaning of RCW 80.16, and that under that statute the alleged contract was void.

While lack of authority in the contracting officer was not pleaded as a defense, at the trial it developed that his title to the presidency was in dispute at the time the services were rendered, because a quorum was not present at the meeting at which he was elected. The corporate minutes showed, however, that his election and subsequent discharge of the duties of the office were ratified in later, regularly constituted meetings of the stockholders and directors.

There was an attempt by the defendant to impeach these minutes, but the trial court found, in its memorandum opinion, that in view of the fact that these minutes had remained in the minute book unchallenged until the time of the trial, they carried greater weight than the impeach-

ing testimony. Even had the evidence been insufficient to show express ratification, the defendant would still be confronted with the well-established rule that a corporation which has accepted and retained the benefits of a contract will not be heard to deny its validity. *Puget Sound Pulp & Timber Co. v. Clear Lake Cedar Corp.*, 15 Wn. (2d) 707, 132 P. (2d) 363, 143 A. L. R. 1249; *Ekstrom v. D. Dierssen, Inc.*, 180 Wash. 493, 40 P. (2d) 138; *Mercy v. A. I. Hall & Son*, 177 Wash. 338, 31 P. (2d) 1009; *McKinley v. Mineral Hill Consolidated Mining Co.*, 46 Wash. 162, 89 Pac. 495; *Dexter Horton & Co. v. Long*, 2 Wash. 435, 27 Pac. 271.

The evidence showed that the plaintiffs rendered services which were of considerable value to the corporation, and that its officers and stockholders knew of and acquiesced in the rendition of these services and, in fact, did not question the corporate liability until suit was brought. We find no error in the court's determination regarding the validity of the agreement, as between the plaintiffs and the corporation.

Nor is there merit in the defendant's contention that the contract was void under the provisions of RCW 80.16. That chapter is a part of the law of this state regulating public utilities and provides, *inter alia,* that no arrangement between a public utility and an "affiliated interest" is valid unless and until it is approved by the public service commission. We will assume, for the purposes of argument, that the plaintiff firm was an affiliated interest, within the meaning of the statute, because one of its members was made a director of the corporation. Nevertheless, we cannot agree with the defendants that, for this reason, the contract was unenforcible. The penalty for failure to submit a contract or arrangement to the commission for approval is prescribed in RCW 80.16.060. Payments made under such a contract or arrangement will be disallowed in computing rates until they have been approved. There was no evidence that the payments made under the plaintiffs' contract were disallowed for this purpose.

The defendant urges that a contract "invalid" under the statute is void and unenforcible. But we cannot agree with this interpretation. If such an arrangement were void, the provision for commission approval after payments had been made would be unnecessary. The very fact that a contract may be approved after payments have been made, even though it was not submitted in the first instance, negatives a legislative intent to make such contracts void. Furthermore, had this been the legislative purpose, the word "void" could have been used, as it was in RCW 80.12 dealing with attempted transfers of public utility property without commission approval.

The defendant cites *Marion Steam Shovel Co. v. Columbus, Delaware & Marion Electric Co.*, 28 Ohio App. 351, 162 N. E. 725; *Lake Erie Power & Light Co. v. Telling-Belle Vernon Co.*, 57 Ohio App. 467, 14 N. E. (2d) 947; and *Lyons v. Otter Tail Power Co.*, 70 N. D. 681, 297 N. W. 691, in support of its interpretation of the statute. The first of the Ohio cases cited was a suit brought by a customer upon its contract for services to be rendered by the public utility. The court held that the contract was unlawful, under the express wording of the Ohio statute requiring contracts between public utilities and their customers to be filed, and denied relief to the customer. The opinion does not reveal whether, under the statute, it was the mutual duty of the public utility and the customer to file the contract, nor does it discuss the penalty imposed by the statute for violation.

The interpretation by the Ohio court of a provision of its statutes relating to contracts for service to customers cannot control our interpretation of RCW 80.16, relating to contracts for services by affiliated interests and containing provisions apparently not to be found in the Ohio statute. The same is true of the second case cited, and in that case there is the added factor that the suit was brought by the utility company to enforce a contract with its customer.

In the North Dakota case, the court held that the plaintiff customer was not precluded from setting up the utility

company's failure to comply with the statute, in avoidance of its contract, because it was not in *pari delicto* with the utility. Dissenting judges felt that the customer had an equal duty to see that the contract was filed and was therefore equally at fault with the defendant and should be estopped. If the principles applied in that case are appropriate here, then the defendant, having failed in its duty to submit the contract for approval, is precluded from setting up the statute.

However, since we conclude that the statute was not intended to render contracts between public utilities and affiliated interests unenforcible, we need not consider the further question of whether the defendant can rely on its own dereliction of duty to avoid its contractual obligations.

Error is also assigned to the court's application of the statute of limitations. It was the plaintiffs' theory that the contract was one for continuous services and that the statute did not begin to run until all of the services were rendered. The court rejected this theory and also rejected the defendant's theory that, because the plaintiffs were to be paid on a per diem basis, the statute began to run at the end of each day's services. The evidence was that the parties agreed upon payment on a per diem basis, rather than a retainer or a contingent fee, and further agreed that payment was to be made at the end of each month on rendition of a statement to the defendant, and the court so found.

 In holding that the period of limitations began to run from the date that each month's bill was payable, the court correctly applied the law. The statute runs from the time that the cause of action arises. *Jones v. Jacobson,* 45 Wn. (2d) 265, 273 P. (2d) 979; *Young v. Seattle,* 30 Wn. (2d) 357, 191 P. (2d) 273, 3 A. L. R. (2d) 704; *State ex rel. McMillan v. Miller,* 108 Wash. 390, 184 Pac. 352. And, of course, there is no cause of action on a debt until it becomes payable. This court has held that where salaries are payable monthly, the statute begins to run monthly. *Gensman v. West Coast Power Co.,* 3 Wn. (2d) 404, 101

P. (2d) 316; *State ex rel. McMillan v. Miller*, *supra.* It is true that, in this case, the plaintiffs were in a position to forestall the running of the statute by delaying the rendition of their statements, but they did not do so and no question of laches is involved.

Finally, it is suggested that the court erred in allowing interest from the dates the statements were first rendered because the claim was unliquidated, but we find no support in the record for this contention. The basis for payment was agreed upon before the services were performed and the correctness of the statements as rendered was not questioned. Claims for services to be paid for at an agreed rate are liquidated claims. See McCormick on Damages 213, § 54, quoted in *Mall Tool Co. v. Far West Equipment Co.*, 45 Wn. (2d) 158, 273 P. (2d) 652.

We find no error, and the judgment is affirmed.

HILL, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.