**UNITED STATES FIDELITY & GUAR-
ANTY COMPANY, a corporation,
Appellant,**

v.

**ANDERSON CONSTRUCTION CO., Inc.,
a corporation, Appellee.**

No. 15681.

United States Court of Appeals
Ninth Circuit.

June 16, 1958.

Rehearing Denied July 22, 1958.

Summers, Bucey & Howard, Lane Summers, Theodore A. Le Gros, Seattle, Wash., for appellant.

Wright, Innis, Simon & Todd, Arthur E. Simon, Douglas Shaw Palmer, Seattle, Wash., for appellee.

Before FEE and HAMLEY, Circuit Judges, and SOLOMON, District Judge.

JAMES ALGER FEE, Circuit Judge.

In this action brought by United States Fidelity & Guaranty Company, hereinafter referred to as "Guaranty," against Anderson Construction Co., Inc., hereinafter referred to as "Anderson," a jury found that an agent of Guaranty orally promised Anderson that the premium for surety bonds to be issued by Guaranty for Anderson in favor of the United States, as obligee, would be based upon reduced rates which the agent stated would soon go into effect and which actually did go into effect about a month after the execution of the bonds.

The questions raised are matters of law. First, was the agent authorized, either expressly or impliedly, to make a promise on behalf of Guaranty which was prohibited by the statutes of the State of Washington, whereby Guaranty would charge and Anderson would pay less than the legal premium for the bonds involved? Second, was the promise of the agent, that the premium would be based upon rates lower than those in effect when the bond was executed, void under these statutes in that a rebate denounced thereby was agreed to be extended to Anderson? Third, did the facts show as a matter of law that there was an account stated or a ratification?

██ The first question was raised by a motion for judgment notwithstanding the verdict made by Guaranty and denied by the trial court. It is certain that the agent could not have been given express or apparent authority "to enter into an agreement prohibited by the statutes of the State of Washington" or to give Anderson any illegal premium rate. The fallacy inherent in the mere statement of the position is obvious. This vice was equally apparent in the requested instructions. Anderson then contended and still contends that the agent had been vested by Guaranty with

apparent authority to make a legal oral agreement in behalf of Guaranty that the premium rates, which would later go into effect, should apply to the bonds of Anderson, for which he was then negotiating. The jury decided that the agent had the authority and that he, in fact, made the promise.[1] These findings, which are necessarily included in the jury verdict, are legally unassailable.[2]

The second question is then a part of the first. The able trial judge determined that such an agreement was not rendered illegal by any section of the Insurance Code of 1947[3] of the State of Washington.

The contention of appellant that the oral agreement was invalid is specifically based upon the following sections of the Code:

"The premium stated in the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof." R.C.W. 48.-18.180(1).

"No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy." R.C.W. 48.18.190.

"No insured person shall receive or accept, directly or indirectly, any rebate of premium or part thereof * * *." R.C.W. 48.30.170(1).

Thus it is said the oral promise was invalidated and prohibited by the express statute above quoted. Other provisions of the same Code suggest that these sections have no relation to premiums upon surety bonds because the text thereof relates only to rebate of the "premium stated in the policy" and "charged for the insurance."

■ The Code covers and regulates companies which write surety insurance as to rate making and other activities.[4] However, there are exclusions of surety insurance contracts from certain vital provisions which affect "policies" of insurance. The requirement that the "policy" shall contain "a statement of the premium" is specifically negated as to "surety bonds,"[5] and for good measure the entire section is made inapplicable to "surety insurance contracts."[6] Thus, as to the very factor here in issue, a definite distinction is made by the controlling legislation. As noted above, this difference is carried forward into R.C.W. 48.18.180(1). The use of the "application" in evidence is forbidden unless a true copy of the application is attached or otherwise made a part of the policy when issued and delivered. R.C.W. 48.-18.080(1). These provisions are inappli-

1. These facts distinguish the case at bar from American Surety Company v. Lind, 132 Wash. 326, 232 P. 280, where the authority of the agent was limited and such limitation was known to the purchaser of the surety bond.

2. Apparent authority "exists * * * when the principal has placed the agent in such position that persons of ordinary prudence are led to believe and assume that the agent is possessed of certain authority, and to deal with him on reliance of such assumption." Larson v. Bear, 38 Wash.2d 485, 490, 230 P.2d 610, 613. See also Galbraith v. Weber, 58 Wash. 132, 137-138, 107 P. 1050, 28 L.R.A.,N.S., 341; Mohr v. Sun Life Assurance Co., 198 Wash. 602, 603, 89 P. 2d 504.

3. R.C.W. chs. 48.01–48.36, 48.48.

4. "All insurance and insurance transactions in this state * * * are governed by this code." R.C.W. 48.01.020. "'Surety insurance' includes: * * * (4) Guaranteeing the performance of contracts * * * and guaranteeing and executing bonds, undertakings, and contracts of suretyship." R.C.W. 48.11.080.

5. "(1) The written instrument, in which a contract of insurance is set forth, is the policy. (2) A policy shall specify: * * * (e) A statement of the premium, other than as to surety bonds * * *." R.C.W. 48.18.140.

6. "This section [48.18.140] shall not apply to surety insurance contracts." R.C.W. 48.18.140(4). The redundancy in R.C.W. 48.18.140(2) (e) was removed subsequent to the commencement of this action by a 1957 amendment to the insurance code: 1957 Washington Session Laws, c. 193, § 11.

cable to surety insurance contracts.[7] It is common knowledge that the applications are not made part of such contracts. The obligee, such as the United States, would not be bound by limitations in the application. The provision that, where the insured has received a rebate "the amount of insurance * * * shall be reduced in the proportion that the amount or value of the rebate * * * bears to the premium for such insurance,"[8] is admitted to be inapplicable to surety bonds. The United States, as obligee, could not be compelled to suffer such a loss contrary to the terms of the sealed instrument. The other sections relating to rebates seem to refer to agreements to repay or remit premiums on policies of insurance.[9] Because of this clear distinction, the oral agreement here is not covered or avoided by the provisions of R.C.W. 48.18.190.[10] Likewise, the prohibition of R.C.W.

48.18.180(2)[11] against officers and agents of the company cannot apply to the agent for Guaranty, who made the promise and entered into the agreement, because there was by law no "premium specified in the policy," as has already been noted.[12]

The "rate filing" sections[13] of the Code apply to the companies writing surety insurance.[14] The effect of these provisions is to subject the company writing the bond to a fine for a deviation from its published rate filed thereunder. These are really administrative penalties to enforce a specified line of conduct among the regulated companies. As a result, it cannot have been the intention of the legislature, as expressed in the Code, to invalidate an agreement for a premium at a reduced rate such as is in controversy here.[15]

Guaranty insists that Anderson made an express written agreement to

7. If these statutory provisions were pertinent, the application for this bond would not be admissible in evidence, not only for the reasons given in the text, but also because of the statutory inhibition.

8. R.C.W. 48.30.170(2). It is notable that only in this section, which is inapplicable to surety companies, is a penalty imposed on the insured. Beside the penalty imposed by the language above quoted, the insured who has received a rebate is subject to a monetary fine.

9. "* * * no insurer * * * shall, as an inducement * * * promise * * * any rebate * * * or reduction of premium * * * named in any insurance contract * * * which is not expressly provided for in the policy." R.C.W. 48.30.140(1). "No insured * * shall receive * * * any rebate of premium * * * not specified or provided for in the policy * * *." R.C.W. 48.30.170(1).

10. This section provides that "no agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy." R.C.W. 48.18.190.

11. This section provides that "no insurer or its officer, employee, agent, solicitor, or other representative shall charge * * * any * * * consideration for insurance which is not included in the premium specified in the policy." R.C.W. 48.18.180(2).

12. Even if the agent had committed a violation of regulations or a tort or personally had violated a statute, his principal might still be bound by a promise. See Regan v. Kroger Grocery & Baking Co., 386 Ill. 284, 54 N.E.2d 210; Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 684, 694–695, 69 S.Ct. 1457, 93 L.Ed. 1628; Globe & Rutgers Fire Insurance Co. v. Draper, 9 Cir., 66 F.2d 985.

13. R.C.W. 48.19.040, 48.19.050, 48.19.280.

14. R.C.W. 48.19.040(1).

15. R.C.W. 48.19.280(1) provides that "every subscriber to a rating organization [Guaranty here] shall adhere to the filings made on its behalf * * * and shall not deviate therefrom except as provided in this section." See also R.C.W. 48.19.040(3).
   The recent words of the Washington Supreme Court, interpreting a statute which made certain fees invalid, are appropriate here. "* * * the defendant urges that a contract 'invalid' under the statute is void and unenforcible. But we cannot agree with this interpretation. * * * had this been the legislative purpose, the word 'void' would have been used * * *." Graves v. Cascade Natural Gas Corporation, 51 Wash.2d 233, 237, 316 P.2d 1096, 1098.

pay the amount of premium in accordance with its filed rate at the time the bond was executed. But all the evidence was submitted to the jury who found necessarily that the contract between the parties was the oral agreement of Guaranty through its authorized agent. Therefore, there could have been no express contract in writing between the parties. The evidence that the amount of $47,753.72 was inserted into the application after it was signed by the officers of Anderson is substantial. Likewise, there is no evidence that Anderson knew of or intended to be bound by a statement by Guaranty to the United States of the premium charged for the bond, which was made on the back of the formal instrument.

The peculiar characteristics of the statute indicate that none of these sections invalidates an oral agreement for a premium on a surety bond at an anticipated reduced rate.

A similar question to the one at bar has been ruled upon by the Supreme Court of the State of Washington. Way v. Pacific Lumber & Timber Company, 74 Wash. 332, 133 P. 595, 49 L.R.A.,N.S., 147. There Way, an insurance agent, sued the Timber Company, which was insured upon a policy which specified a lesser sum as a premium than the company would have been permitted to charge under its rate schedule. The Washington Supreme Court upheld a denial of recovery to the agent. The ground was that the agent could only recover on the contract, express or implied, and, since defendant had not agreed

to pay more and since no such obligation was implied by statute, defendant must prevail. The court went further, however, and expressed the view that a contract to pay a lesser premium than that required by the rating schedule of the insurance company was not invalid under the provisions of the current statute.[16] If this reasoning were applicable to the present situation, then the only contract to pay a premium for the bond, found by the jury in this case, would be unaffected by the rating and penalty provisions and would be valid.

■ It is the duty of this Court to apply the statutes and decisions of the courts of the State of Washington to this local problem before us. If there is an area not covered by decisions of these courts, an effort must be made to find a solution which accords with the tendencies inherent in the opinions of such courts in the past. Of course, it goes without saying that the courts of that state may decide otherwise tomorrow, and that holding will also bind us.

■ It is said the pertinent expressions of the Way case are dicta.[17] But the contract there considered was held legal in view of the statutory provisions. It seems reasonable to believe that the oral contract in this case would be held valid also by the same court. A meticulous examination of the provisions of the statute in effect at the time of decision of the Way case with the current statute proves that the latter is essentially a re-enactment of the earlier Act. There are changes, modifications and additions, but these neither change the spirit of the law

---

16. The court said: " * * * plaintiff's [Way's] error lies in the assumption that the contract between the copartnership [Way] and the defendant was void, whereas the rule is that a contract which violates a statutory regulation of business is not void unless made so by the terms of the act." Way v. Pacific Lumber & Timber Company, 74 Wash. 332, 333, 133 P. 595, 49 L.R.A.,N.S., 147. This principle was reaffirmed recently by the Washington Supreme Court in Fleetham v. Schneckloth, Wash., 324 P.2d 429.

17. "In the application of a state statute * * * the obligation to accept local interpretation extends not merely to definitive decisions, but to considered dicta as well." Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488, 489. "Considered dictum of [the state supreme court] * * * should not be ignored when a federal court is attempitng to construe or ascertain the meaning of the local law, whether it be the state statute or the State Constitution." Badger v. Hoidale, 8 Cir., 88 F.2d 208, 211, 109 A.L.R. 798.

nor affect materially the provisions governing this contract.[18]

The clauses which relate to companies writing surety insurance contracts and which relate to such contracts apparently are inept to avoid the oral contract. These have less application by far than those in the Way case to the express written contract therein stated. There was apparently involved there a "policy," whereas the provisions relating to a "policy" expressly exclude surety bonds, as has been noted.

The final question is that of ratification and account stated. The verdict of the jury can only be interpreted as finding an express oral agreement that the premium charged should be $35,576.79. The question of whether there was a written agreement for $47,753.72 was decided also. The basis for this last claim was the evidence that the $47,753.72 was filled in on the application blanks. But there was testimony that the sum was filled in after the agents of Anderson had signed them. Guaranty cites the clause in the application form which provides that it has the power to fill up all blanks in the application. The jury apparently believed Guaranty was bound to fill in the amount agreed upon of $35,576.79, and not an arbitrary amount which was contrary to its agreement.

The same argument is applicable with regard to the so-called ratification. Guaranty contends that the bonds submitted to the United States contained upon the reverse a statement that the premium charged was $47,753.72. This evidence was before the jury, which held that there was only one contract in existence. Inherent in this finding is the proposition that no different contract was made by the agents of Anderson when they signed these bonds on the face for delivery to the government. The bonds were prepared by Guaranty.

There is no evidence the agents of Anderson knew or saw what was on the reverse. Likewise, there is no account stated as a matter of law. The evidence in this regard is as follows: Bills for $47,753.72, the premium amount borne by the application and the reverse side of the signed bonds, were submitted to Anderson. Partial payments totaling one-half the amount were paid without protest to Guaranty, although there was evidence of oral protests to and attempts to adjust the amount of the premium due with the agent through whom the bonds were obtained. The jury had this evidence before them also. When they decided there was only one contract for a premium of $35,576.79, they settled this question as to fact. An account stated depends upon intent and knowledge,[19] which apparently were lacking here.

Affirmed.

---

18. Yakima Valley Bank & Trust Company v. Yakima County, 149 Wash. 552, 556–557, 271 P. 820.

19. Shaw v. Lobe, 58 Wash. 219, 221, 108 P. 450, 29 L.R.A.,N.S., 333; Austin v. Union Lumber Company, 95 Wash. 608, 610; Merritt v. Meisenheimer, 84 Wash. 174, 176, 146 P. 370.